Larry Wayne LUCAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 149–84.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 5, 1986.

Terrence Gaiser, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough and Doug Durham, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of theft over $200.00. Punishment enhanced by one prior conviction was assessed at fifteen years' confinement. The Waco Court of Appeals reversed appellant's conviction and entered an order of acquittal after finding that there was no competent evidence to establish the value of the stolen property. *Lucas v. State*, 672 S.W.2d 240 (Tex.App.—Waco 1983).

Appellant was charged with stealing a shipping crate containing eleven grinding discs from a warehouse at the Port of Houston. The State attempted to prove the value of the property stolen through the testimony of Lita Williams, an employee of Maersk Line Agency. Williams testified that the Maersk Line Agency was a steamship company which imports and exports cargo. Williams brought with her the documents in her custody that pertained to the stolen property. Prior to introducing these documents into evidence, the State attempted to establish the predicate required by Article 3737e, V.A.C.S., the Business Records Act:

"Q. And are those records made in the regular course of business?

"A. Yes, sir.

"Q. Are they made at or near the time that the cargo is received at the Port of Houston?

"A.   They're made previous.[1]

"Q.   Okay.  And are those records made by an individual who has personal knowledge of what the contents of that cargo is?

"A.   Yes, sir, they're keyed in with the computer by what is shipped out on the vessel."

The State then attempted to introduce the documents into evidence.  Appellant raised several objections including the fact that the State had not demonstrated that the documents were prepared by someone with personal knowledge of the information contained therein.  Out of the presence of the jury, the court indicated that it believed the State had properly proved up the predicate but allowed appellant to voir dire the witness.  The following occurred during this voir dire examination:

"Q.   Ms. Williams, do you know who kept—who made these records initially?

"A.   You mean the handwritten records?

"Q.   No, the typed or printed portions.

"A.   Kay G. Benson, who cut the entry, the 7512 customs form; you will see down at the lower right-hand corner.  They cut the entry to move the eight cartons in bond.

.        .        .        .        .

"Q.   Do you know if that person had in fact been present and observed those items being received to the port?

.        .        .        .        .

"A.   No, ma'am, those records were prepared by a broker.

"Q.   So that the broker wasn't present, is that correct, at the time?  That the—so that broker was not present at the time that the cargo was unloaded, is that correct?

"A.   No broker is ever present at the time the cargo is unloaded.

"Q.   So it is a broker who prepared these documents?

"A.   Yes, he prepared the in bond documents because we are a steamship company, and we are not allowed to cut the entry to move it; we just bring the cargo in; we are not a trucking company or—you know.

.        .        .        .        .

"Q.   Okay.  But, with regard to the original—the person who prepared this in bond document, that person didn't have personal knowledge of the items, that is, that person didn't in fact see the items, is that correct?

"A.   No, no broker is ever permitted in the Port of Houston.

"Q.   Okay.  These documents were prepared here, that is, here in the Port of Houston?

"A.   They were prepared in Kay G. Benson's office.

"Q.   Is that here in Houston, at the Port of Houston?

"A.   No, they were—Kay G. Benson is located downtown.

"Q.   So the person who prepared this in bond document didn't have personal knowledge of what in fact was unloaded, is that correct?

"A.   Well, the knowledge she had was an original bill of lading, which is a negotiable item.

"Q.   Would that person—what that person was doing was looking at another piece of paper, is that correct?

"A.   Well, a bill of lading is negotiable as money.

"Q.   Yeah, but it's a piece of paper, isn't that correct?

"A.   Yes.

"Q.   He didn't have personal knowledge of the unloading and personally see the delivery of these items, isn't that correct?

.        .        .        .        .

"A.   That's right.

.        .        .        .        .

**1.**  Although not necessary to the resolution of the instant appeal, we note that Article 3737e provides that the record must have been "made at or near the time of the act, event or condition or reasonably soon thereafter."  On retrial, it might behoove the State to clarify the time element involved.

"Q. ... So that the person who prepared this document didn't have personal knowledge of the items, what she was making notations about, is that correct?

"A. Only a negotiable bill of lading, an original (sic).

"Q. And the person would not have in fact seen the items themselves because this person was not permitted into the port, is that correct?

"A. That's right.

"Q. And that person, where it says here, the weight of the item, that person therefore would have no knowledge, personal knowledge of the weight of the item, is that correct?

"A. Yes, he would, off of the original bill of lading.

"Q. Not personal knowledge by himself, is that correct?

THE COURT: You mean that—did he personally weigh it?

"Q. ... Did he personally weigh it, ma'am?

"A. I doubt very seriously.

"Q. Well, he was not permitted in the area where the item was, was he?

"A. No, ma'am.

.    .    .    .    .

"Q. Now, the person who prepared these forms didn't have personal knowledge of the information that was reported on the form, did he?

"A. Yes, he did.

"Q. He did not see the items, did he?

"A. No, he did not see the items, but he did have the information as to the value.

"Q. From another source, is that correct?

"A. From Maersk Lines overseas.

"Q. And are you—when you say from overseas, that might—

"A. Leghorn, L–E–G–H–O–R–N, Italy, where the cargo was shipped.

"Q. So this information was prepared from other pieces of paper that had information on them, is that correct?

"A. It was prepared by the shipper.

"Q. But, this piece of paper, these two pieces of paper that I have in my hand, as well as this third piece of paper, was prepared from other documents, is that not correct?

"A. From the documents from overseas.

"Q. Okay. So it's correct that they were prepared from other documents, isn't that correct?

"A. Yes."

Following this testimony, the court ruled that the documents would be admitted into evidence. The jury was returned to the courtroom and the prosecution had the witness testify as to the contents of the exhibit. This testimony included the fact that the value of the cargo was $463.00.

The Court of Appeals reversed the conviction because the State failed to establish either that someone with personal knowledge made the record or that someone with personal knowledge transmitted the information to be included in the record.

The State contends in its petition as it did before the Court of Appeals that State's Exhibit 15 was in fact a bill of lading and under V.T.C.A., Business and Commerce Code, § 1.202 was self-proving. Thus, the State argues it did not have to lay the predicate required by Article 3737e, supra. The Court of Appeals, relying on Comment 2 to V.T.C.A., Business and Commerce Code, § 1.202, supra, rejected this argument and held that since the instant case involved a criminal prosecution and did not arise out of a contract between the parties involved in the prosecution, the document was not admissible under V.T.C.A., Business and Commerce Code § 1.202, supra.

We find it unnecessary to address the issue concerning V.T.C.A., Business and Commerce Code, § 1.202, supra, and how it relates to the instant case because neither of the documents making up State's Exhibit 15 is a bill of lading. The document[2]

2. We note that at the portion of the record

containing State's Exhibit 15, only one doc-

containing the value of the cargo is enumerated "Customs Form 7512" and is titled "TRANSPORTATION ENTRY AND MANIFEST OF GOODS SUBJECT TO CUSTOMS INSPECTION AND PERMIT." The second document contains the following paragraph:

"THIS MEMORANDUM

is an acknowledgment that a Bill of Lading has been issued and is not the Original Bill of Lading, nor a copy or duplicate, covering the property named herein, and is intended solely for filing or record."

We now turn to the requirements of Article 3737e, V.A.C.S.[3] The proponent of a business record must prove that (1) it was made in the regular course of business, (2) it was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record; and (3) it was made at or near the time of the act, event or condition or reasonably soon thereafter. Article 3737e, Section 1, supra.

◼ An examination of the testimony set out above shows that the Court of Appeals was correct in their analysis of the evidence. The record indicates that the broker who prepared State's Exhibit 15 never saw the cargo and did not have any personal knowledge of the value of the cargo but instead had relied on a bill of lading prepared by the shipper in Italy. There is no evidence that the Italian shipper had personal knowledge of the value of the stolen disks. Thus the State failed to satisfy the requirements of Article 3737e, supra, and the exhibit was improperly admitted.

◼ The State argues that should it be determined that the evidence was improperly admitted, an order of acquittal should not be entered due to insufficiency of the evidence, but instead the case should be remanded for a new trial due to trial error. We agree. On original appeal appellant argued that since State's Exhibit 15 was improperly admitted, there was no competent evidence to show the value of the stolen property and thus the evidence was insufficient. Appellant does not maintain that all the evidence, proper and improper, is insufficient to support the conviction. See *Porier v. State*, 662 S.W.2d 602, 606 (Tex.Cr.App.1984). Instead, like the appellant in *Collins v. State*, 602 S.W.2d 537 (Tex.Cr.App.1980):

"... appellant ... tries to bootstrap himself into an acquittal by arguing first that a piece of evidence was admitted erroneously, and then that the erroneously admitted evidence must be discounted in considering the sufficiency of the evidence." 602 S.W.2d at 539 (Concurring opinion).

We reverse and remand for trial error. *Roeder v. State*, 688 S.W.2d 856 (Tex.Cr.App.1985); *Schmidt v. State*, 659 S.W.2d 420 (Tex.Cr.App.1983); *Adams v. State*, 639 S.W.2d 942 (Tex.Cr.App.1982).

---

ument is attached. The State's Brief in Support of the Petition for Discretionary Review pointed out that the second document, Customs Form 7512, was mistakenly included in the record with State's Exhibit No. 16.

3. Effective September 1, 1986, the new Texas Rules of Criminal Evidence will take effect. As of that date admission of documents such as those in the instant case will be governed by Rule 801 which provides in pertinent part that certain records will not be excluded by the hearsay rule:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not."

The judgment of the Court of Appeals is reformed to show that the case is reversed and remanded to the trial court.