Clinton WEBB, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–89–01022–CR.

Court of Appeals of Texas,
Dallas.

July 29, 1992.

Lawrence B. Mitchell, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before KINKEADE, OVARD and ROSENBERG, JJ.

## OPINION

KINKEADE, Justice.

Clinton Webb appeals his jury conviction for aggravated robbery. The jury assessed punishment at life imprisonment. In five points of error, Webb contends that the trial court erred in (1) overruling his objection to the prosecutor's use of peremptory challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), (2) denying his request to cross-examine the prosecutor concerning her exercise of peremptory challenges, (3) overruling his hearsay objections, and (4) overruling his objection to State's Exhibit 40. On October 23, 1990, this Court sustained Webb's second point of error and abated this appeal to allow Webb the opportunity to question the prosecutor concerning her exercise of peremptory strikes during *voir dire*. The trial court conducted the hearing on June 14, 1991, and we reinstated Webb's appeal on November 20, 1991.

Because the trial court did not err when it overruled Webb's *Batson* objection, hearsay objections, and objection to State's Exhibit 40, we overrule his remaining points of error. We affirm the trial court's judgment.

## FACTS

Clinton Webb, John Webb, and Keith Busby robbed a gas station on April 27, 1985. During the robbery, two people were shot, one of whom died as a result of his injury.

## *BATSON* CHALLENGE

In his first point of error, Webb contends that the trial court erred in overruling his *Batson* objection to the prosecutor's use of peremptory challenges. Webb argues that the prosecutor excluded an African-American venireperson from the jury solely on racial grounds.

At oral argument, Webb's counsel also argued that this Court should abate the case because our previous abatement order instructed the trial court to make written findings of fact and conclusions of law,

which the trial court did not do. We conclude that our previous order did not require the trial court, at the abatement hearing, to make findings of fact and conclusions of law and that the trial court properly followed our earlier abatement order.

At the time of this trial, a prosecutor violated a defendant's equal protection rights by using peremptory strikes to eliminate members of the defendant's race from the jury. *See Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1723; *Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991) (eliminating same race requirement); *see also* TEX.CODE CRIM.PROC. ANN. art. 35.261 (Vernon 1989). Under *Batson*, the defendant must establish a prima facie case that the State purposefully discriminated against members of his own race in the exercise of its peremptory challenges. *Batson*, 476 U.S. at 93–94, 106 S.Ct. at 1721. Once the defendant establishes a prima facie case, the burden shifts to the State to come forward with a race-neutral explanation for challenging the venireperson. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. If the State presents genuine race-neutral explanations for exercising its peremptory challenges, the burden then shifts back to the defendant to persuade the trial court by a preponderance of the evidence of the truth of the purposeful discrimination allegations. *Straughter v. State*, 801 S.W.2d 607, 613 (Tex.App.—Houston [1st Dist.] 1990, no pet.). The defendant must do more than simply state his disagreement with some of the State's explanations. He must prove affirmatively that the State's race-neutral explanations were a sham or pretext. *Straughter*, 801 S.W.2d at 613.

■ Once the trial court grants a *Batson* hearing, a prima facie case of discrimination exists. *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex.App.—Dallas 1990, pet. ref'd). In reviewing the findings of the trial court on *Batson* issues, this Court follows the clearly erroneous standard. We analyze the trial court's decision by reviewing the record in its entirety and consider the *voir dire* process, including the make-up of the venire, the prosecutor's explanation, and

the defendant's rebuttal and impeachment evidence. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1990) (op. on reh'g). A finding is clearly erroneous, though there is evidence to support it, if a review of the entire record leaves the reviewing court with the definite and firm conviction that the trial court committed a mistake. *Id.* at 721. This Court examines the record in the light most favorable to the trial court's rulings. *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, — U.S. —, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). We determine whether the record supports the race-neutral reasons provided by the prosecutor and whether the defendant rebutted the prosecutor's explanations. *Id.* To do so, the defendant must introduce sufficient evidence to rationally infer that the prosecutor engaged in purposeful racial discrimination. *Id.* We must evaluate the trial court's findings with regard to each minority person struck, because *Batson* prohibits the use of even one purely racially motivated strike. *Whitsey*, 796 S.W.2d at 727.

■ At the conclusion of *voir dire*, Webb's co-defendant made a *Batson* motion, which Webb joined. Defense counsel claimed that the State had struck venireperson two, Ms. Watson, for racially-motivated reasons. He established that (1) the defendants were African–American, (2) seven members of the venire panel were African–American, (3) the State peremptorily struck four of these seven persons, and (4) three of these seven persons served on the jury. Without specifically finding a prima facie case, the trial court allowed the State an opportunity to put into the record the reasons for its peremptory strikes.

The State explained that it struck Ms. Watson and venireperson twenty-five for chewing gum in court and that "one was white and one was black." The State also explained that prosecutorial notes listed Ms. Watson as a bad juror in a prior case. The State asked Ms. Watson no questions. Webb's co-defendant, however, asked her about prior jury service. She stated that two years earlier she had served on a criminal jury in a rape case. When asked if the

jury had reached a unanimous verdict in that case, she responded "kind of." At oral argument after reinstatement of the appeal following the abatement hearing, Webb's counsel stated that the case that Ms. Watson had previously served on resulted in a hung jury. The trial court denied Webb's co-defendant's request to cross-examine the prosecutor, but it allowed him to put a statement in the record. He stated, "Number two was definitely chewing gum." As a result of the trial court's refusal to allow cross-examination of the prosecutor, this Court abated the appeal to allow for cross-examination.

At the hearing following abatement, the prosecutor testified that, based on information received from her investigator, she struck Ms. Watson because the district attorney's office had Ms. Watson listed as a bad juror in a prior case. The prosecutor explained that the district attorney's office keeps a book with a list of jurors who were exceptionally good or bad jurors in prior cases. The list contains the jurors' names, addresses, and the type of case involved but gives no reason for the classification. When asked for some of the reasons that a person would be listed as a bad juror, the prosecutor responded, "When they find a case not guilty, when they give a weak punishment." The prosecutor further explained that she gives a list of the venire panel to her investigator who then checks to see if anyone on the list has a criminal record or is listed in the jury book. If a venireperson is listed in the book, the investigator places either a "B," "F," or "G" by that person's name to indicate whether they were previously a bad, fair, or good juror. In this case, a "B" appeared beside Ms. Watson's name. The prosecutor also testified that she struck Ms. Watson and a white venireperson for chewing gum, which she thought showed disrespect for the court and showed that Ms. Watson might not take this case, which involved a robbery and murder, seriously.

■ The State may base its race-neutral explanations on non-verbal behavior. *Ivatury*, 792 S.W.2d at 848. A bad record during prior jury service is a race-neutral

explanation for striking a venireperson. *Id.* Prior service on a criminal jury that fails to reach a verdict is a race-neutral explanation for striking a venireperson. *Levy v. State,* 749 S.W.2d 176, 178 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *see Yarbough v. State,* 732 S.W.2d 86, 90 (Tex.App.—Dallas 1987) (strike for previous jury service in civil case that resulted in mistrial race-neutral, though venireperson gave no indication of how she voted), *vacated on other grounds,* 761 S.W.2d 17 (Tex.Crim.App.1988).

The prosecutor struck Ms. Watson because the prosecutor's investigator told her that Ms. Watson was a bad juror and because she observed Ms. Watson chewing gum. · We do not condone the use of a list by the prosecutor that gives no explanation for its categorization of previous jury service or does not state any criteria for inclusion on the list or in a particular category. The use of this type of list too easily allows the possibility of misuse by an unscrupulous prosecutor wishing to circumvent the *Batson* issue. In this case, however, Ms. Watson's response to defense counsel's questions supports the prosecutor's explanation. Both of the prosecutor's explanations for striking Ms. Watson serve as objective bases that would logically induce any prosecutor to exercise a peremptory challenge regardless of the venireperson's ethnic background. *See Ivatury,* 792 S.W.2d at 848.

After the State presented these race-neutral explanations, the burden shifted to Webb to prove affirmatively that the State's explanations were a sham or pretext. *Straughter,* 801 S.W.2d at 613. During cross-examination, the prosecutor stated that she routinely struck all persons listed as bad jurors. The prosecutor also stated that she consistently, but not automatically, struck all gum chewers. She said that the only time she did not strike gum chewers is when she knew additional information, beyond that typically obtained at *voir dire,* that indicated to her that the individual would make a "wonderful" juror, *i.e.,* they were the chief-of-police or a lifetime friend of the victim. The trier of fact is the sole judge of the credibility of the witnesses and may accept or reject any part or all testimony given by State or defense witnesses. *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Crim.App. [Panel Op.] 1978); *Fisher v. State,* 803 S.W.2d 828, 830 (Tex.App.—Dallas 1991, pet. ref'd).

Because the State presented genuine race-neutral explanations for exercising peremptory challenges, and Webb did not affirmatively prove that the State's explanations were a sham or pretext, the trial court's decision to overrule Webb's *Batson* objection was not clearly erroneous. We overrule Webb's first point of error.

## HEARSAY

■ In his third and fourth points of error, Webb contends that the trial court erred in overruling his hearsay objections to the introduction of jail cards containing information on his prior criminal history. Webb argues that the State failed to set forth the necessary predicate required by rule 803(6) of the Texas Rules of Criminal Evidence because the employees of the Dallas County Sheriff's Office had no personal knowledge of the cause numbers on the jail cards used to link him to judgments and sentences in State's Exhibits 40, 41, and 42. Webb cites *Lucas v. State,* 721 S.W.2d 315 (Tex.Crim.App.1986), in support of his argument.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). Hearsay is not admissible except as provided by statute or the Texas Rules of Criminal Evidence. TEX.R.CRIM.EVID. 802. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. TEX.R.CRIM.EVID. 805.

At punishment, the State introduced three jail cards marked as exhibits 71–A, 72–A, and 72–A–1. The jail cards contained, with other information, indictment or cause numbers from Webb's prior offenses. These cause numbers, which are transmitted by the court to the Dallas Sher-

iff's Office, matched the cause numbers in State's Exhibits 40, 41, and 42, the judgments and sentences of Webb's prior offenses, and assisted the State in linking Webb to these prior offenses.

Webb misplaces his reliance on *Lucas.* In *Lucas,* the State attempted to prove the value of stolen property with documents and testimony from an employee of the steamship company hired to transport the property. The court in *Lucas* decided that case under the now repealed Business Records Act, article 3737e of the Texas Civil Statutes. The court noted that the legislature had repealed the Business Records Act and effective September 1, 1986, rule 803(6) of the Texas Rules of Criminal Evidence would govern the admissibility of such evidence. *Lucas,* 721 S.W.2d at 318 n. 3. Prior to repeal, section 1(b) of article 3737e read:

> It was the regular course of that business for *an employee or representative of such business with personal knowledge* of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

Act of May 14th, 1951, 52nd Leg., R.S., ch. 321, § 1(b), 1951 Tex.Gen.Laws 545, *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 9(b), 1985 Tex.Gen.Laws 2472, 2474 (emphasis added). Webb attempts to apply the specific words of article 3737e to rule 803(6) by arguing that the Dallas Sheriff's Office did not have personal knowledge of the cause numbers on the jail cards because the cause numbers were transmitted to the Dallas Sheriff's Office by the court.

> Rule 803(6) provides as follows:
>
> **803(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, *or from information transmitted by,* a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data

compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX.R.CRIM.EVID. 803(6) (emphasis added). Rule 803(6), unlike article 3737e, does not require that an employee of the business have personal knowledge. To establish the predicate for admissibility under rule 803(6), the State must show by the testimony of the record's custodian or other qualified witness that the record:

> (1) was made at or near the time by, *or from information transmitted by,* a person with knowledge,
>
> (2) was kept in the course of a regularly conducted business activity, and
>
> (3) was made as a part of a regular practice of that business activity.

TEX.R.CRIM.EVID. 803(6).

Webb's co-defendant objected to the State's failure to lay an adequate predicate to rule 803(6) solely on the basis that neither the record custodian, Max Chester, nor anyone else in the Dallas Sheriff's Office had personal knowledge of how the cause numbers on the jail cards were generated. Because rule 803(6) does not require that employees at the Dallas Sheriff's Office have personal knowledge of information transmitted to them by others, the trial court did not err in allowing the introduction of the jail cards. We overrule Webb's third and fourth points of error.

## ADMISSION OF STATE'S EXHIBIT 40

■ In his fifth point of error, Webb contends that the trial court erred in overruling his objection to State's Exhibit 40, which indicated an indictment for murder, when he was convicted of the lesser-included offense of aggravated assault. Webb argues that exhibit 40 goes behind the indictment and conviction and goes to the facts of the conviction.

■ During punishment, the State sought to introduce State's Exhibit 40, a copy of a judgment and sentence in Cause No. F80–3209–KM. Testimony established that exhibit 40 shows an indictment for murder but, upon motion, the district attorney was permitted to try the case on the lesser-included offense of aggravated assault. In proving a defendant's prior criminal record at the punishment stage, pleadings—indictment, complaint, and information—are admissible. *Fairris v. State,* 515 S.W.2d 921, 923 (Tex.Crim.App.1974); *see generally* TEX.CODE CRIM.PROC.ANN. art. 37.-07, § 3(a) (Vernon Supp.1992). Details of a prior offense, however, are inadmissible. *Walker v. State,* 610 S.W.2d 481, 483 (Tex. Crim.App. [Panel Op.] 1980).

In *Gamble v. State,* 717 S.W.2d 14 (Tex. Crim.App.1986), the State introduced prior judgments of the defendant for enhancement purposes. The judgments reflected indictments for felony theft but convictions for the lesser-included offense of misdemeanor theft. The court ruled that the admission of these judgments was not a "detail" of the prior offense for article 37.07, section 3(a) purposes. *Gamble,* 717 S.W.2d at 16. Here, as in *Gamble,* Webb was indicted for murder but convicted of the lesser-included offense of aggravated assault. Therefore, just as in *Gamble,* Webb's judgments and sentences are not "details" of his prior offenses and are admissible for article 37.07, section 3(a) purposes. Because Webb's murder indictment was not a "detail" of Webb's prior offense, the trial court did not err in overruling his objection to State's Exhibit 40. We overrule Webb's fifth point of error.

We affirm the trial court's judgment.