**Opinion issued June 26, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00423-CR

———————————

**KEVIN EDISON SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. 15846**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Kevin Edison Smith, of capital murder. The State did not seek the death penalty, so the trial court assessed punishment at confinement for life. In two issues, appellant contends the trial court erred by (1)

overruling his *Batson* challenges and (2) denying a jury charge on the lesser included offense of murder.  We affirm.

## BACKGROUND

On March 5, 1996, police discovered the body of 13-year-old Krystal Jean Baker lying near the edge of the road under the Trinity River Bridge. An autopsy revealed that Baker had been strangled with a ligature of some sort.  Photos taken at the scene showed a large abrasion spanning from one side of Baker's neck to the other. There was also a laceration in her vaginal area.  Officers took custody of Baker's dress and underwear and collected scrapings from under her fingernails.

The case was unsolved for 14 years.

In October 2009, police in Chambers County began reviewing the cold case. New tests were performed on Baker's clothing and semen was detected on it in several places.  From cuttings taken from the dress, DPS forensic officers developed a profile of a single source unknown male.  The same DNA was present in the fingernail scrapings.

On September 22, 2010, appellant was arrested pursuant to a warrant for murder.  Shortly after his arrest, police obtained a court order to take buccal swabs from appellant.  From these buccal swabs, a DNA profile for appellant was developed.  Appellant's DNA profile matched that of the unknown male whose DNA was on Baker's clothing and fingernail scrapings.  A DPS forensic scientist

2

testified that the probability of an unrelated person selected at random for having such a match would be 1 in 8.591 sextillion for blacks.

Once in custody, appellant's family hired community activist, Quanell X, to assist appellant in dealing with police. Quanell X told appellant, "If you are innocent, brother, I am going to stand with you. If you didn't do this, I will stand with you; but if you did do this, don't disrespect my name, my credibility or your family. Don't get us all involved in something if there is more to this." Quanell X, then arranged an interview, which he, appellant, members of the sheriff's department, and the district attorney attended.

During the interview, appellant testified that he picked up a girl he believed to be named "Michelle" and, after she told him she was 18-years-old, he paid her for sex. "Michelle" performed oral sex on him, but "freaked out" after he ejaculated on her. Appellant said that he pleaded with her to be quiet so that others at the gas station nearby would not hear. When she would not comply, he began to choke her with his hands. When pressed about whether he used a ligature rather than his hands, appellant admitted that he grabbed the strap to a bucket and choked her with that. He "freaked out" when he realized that she was not breathing and began to drive. He then dumped her body under the Trinity River Bridge.

3

The State also admitted a telephone call that appellant made to his aunt while he was in custody. In the call, he admitted that he had oral sex with the victim.

## *BATSON* CHALLENGE

Before the jury was empaneled, appellant made a *Batson* challenge to the State's use of its peremptory strikes on veniremenbers 8, 11, and 16—the only three African-American members of the venire—claiming that they were racially motivated. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986). After hearing argument concerning the State's explanations for these strikes, the district court ultimately denied appellant's *Batson* challenge as to all three jurors. In his first point of error, appellant contends that the district court erred in denying his *Batson* challenge.

*Standard of Review and Applicable Law*

In *Batson,* the United States Supreme Court held that a prosecutor is forbidden from exercising peremptory strikes based solely on the race of the potential juror. *Id.* at 89. To succeed on a *Batson* challenge, the defendant must demonstrate by a preponderance of the evidence that the prosecutor indulged in purposeful discrimination against a member of a constitutionally-protected class in exercising his peremptory challenges. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). There is a three-step process for evaluating claims that a

4

prosecutor has impermissibly exercised its peremptory challenges on the basis of race. *See Hernandez v. New York*, 500 U.S. 352, 358, 111 S. Ct. 1859, 1865 (1991). "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race." *Id.* (citing *Batson*, 476 U.S. at 96–97). "Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question." *Id.* at 358–59 (citing *Batson*, 476 U.S. at 97–98). "Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* at 359 (citing *Batson*, 476 U.S. at 98).

On appeal, the State does not dispute that appellant made a prima facie showing that the State exercised its peremptory challenges on the basis of race. Thus, our review is confined to the second and third steps of the analysis. "At the second step of this process, the proponent of the strike need only tender an explanation that is race-neutral on its face." *Watkins,* 245 S.W.3d at 447 (citing *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S. Ct. 1769 (1995)). "The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination." *Id.* (citing *Purkett*, 514 U.S. at 768).

5

"Whether the opponent [of the strike] satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pretextual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Id.* (citing *Gibson v. State,* 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) ("The term 'pretext' is solely a question of fact; there is no issue of law.")). Accordingly, on appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207 (2008); *Watkins*, 245 S.W.3d at 447–48. In other words, the trial court's ruling will not be disturbed on appeal unless the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *Hernandez*, 500 U.S. at 369. "This is a highly deferential standard because the trial court is in the best position to determine whether a prosecutor's facially race-neutral explanation for a peremptory strike is genuinely race-neutral." *Gibson*, 144 S.W.3d at 534; *see also United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (*Batson* inquiry is "quintessentially a question of fact which turns heavily on demeanor and other issues not discernable from a cold record, such that deference to the trial court is highly warranted."). Therefore, "in the absence of exceptional circumstances," we are to defer to the trial court. *Hernandez*, 500 U.S. at 366. We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for

exercising strikes, and we focus on the genuineness, rather than the reasonableness, of the prosecutor's asserted nonracial motive. *Gibson*, 144 S.W.3d at 533–34. Moreover, we are to view the evidence relevant to the *Batson* challenge in the light most favorable to the trial court's ruling. *Cantu v. State,* 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); *Moore v. State,* 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008), *pet. dism'd, improvidently granted*, 286 S.W.3d 371 (Tex. Crim. App. 2009).

*Race-Neutral Explanations*

Regarding veniremember 8, the following exchange took place:

[Prosecutor]: Number 8 is Ms. Carrington. She has a child about the same age of the defendant[1] and also in response to a question from [Defense Counsel] that girls lie and she lied about her age. Also I have been informed that she is a relative of the guy that is guarding

---

[1] This information was apparently obtained from juror information cards that were filled out by jurors before voir dire. Although the State attaches what purport to be the juror information cards from the trial, they are not included in the record of the case. However, information provided on juror information cards may be considered, even if they are not admitted into evidence, if defense counsel referred to the cards during the *Batson* argument and it is apparent that the parties and the trial court regarded the cards as part of the evidence on which the trial court would rule. *Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993). In this case, both attorneys referred repeatedly to the juror questionnaires during the *Batson* hearing. Similarly, an appellate court may consider counsel's factual assertions during the *Batson* hearing as evidence if they were considered by the trial court without objection. *White v. State*, 982 S.W.2d 642, 645 (Tex. App.—Texarkana 1998, pet. ref'd); *see also Emerson v. State*, 820 S.W.2d 802, 804 (Tex. Crim. App. 1991) ("Because there were no objections made to appellant's undisputed observations [during the *Batson* hearing], we hold that [these] observations constitute valid proof in support of appellant's prima facie case."); *Jones v. State*, 795 S.W.2d 32, 34 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (same). We will thus accept the factual assertions of counsel unless they were contradicted or objected to.

this defendant. So in the interest of justice, I thought I would strike her.

[Trial Court]: The deputy guarding the defendant?

[Prosecutor]: Apparently it is a relative of hers. I was informed of this; so in the interest of justice, I struck her.

The fact that a relative of the veniremember knew the defendant because he was assigned to guard him is a race-neutral reason because there is no discriminatory intent inherent in the explanation. *See Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995).

Regarding veniremember 11, a 20-year-old African-American female, the following exchange took place:

[Trial Court]: All right. Next?

[Defense Counsel]: Number 11.

[Prosecutor]: Number 11, too young. I mean, I also struck Numbers 5 and 6 who are white, females and I think this is an awful case. I think they are too young to handle this.

[Trial Court]: Okay.

The prosecutor's belief that the veniremember was too young to handle such an "awful case" is a race-neutral reason for the exercise of a peremptory strike. *See Chambers v. State*, 724 S.W.2d 440, 442 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). The prosecutor also struck veniremembers 5 (age 21), 6 (age 22),

8

who were white, and veniremember 7 (age 22), who was Hispanic, indicating that he thought that they too, like veniremember 11, were too young.

Finally, regarding veniremember 16, a 71-year-old African-American male, defense counsel's voir dire questioning elicited the information that before his retirement, he worked "as an engineer." On his juror information car, this veniremember had indicated his highest level of education completed as "H.S. diploma." With respect to the State's explanation for this strike, the following exchange took place:

> [Trial Court]: What about 16?
>
> [Prosecutor]: 16 is a retired engineer. His highest level of education is a high school diploma. I actually never noticed him throughout the entire voir dire because he was blocked by the juror in front of him. So the reason is that—you could look at my sheet here where is says engineer, I have three question marks; high school diploma, question mark again. That is why I struck him.
>
> [Defense Counsel]: He could have been a railroad engineer.
>
> [Prosecutor]: No, Your Honor.

The prosecutor's apparent belief that veniremember 16's juror information card conflicted with his answers is a race-neutral explanation for the strike. *See Ester v. State*, 151 S.W.3d 660, 662 (Tex. App.—Waco 2004, no pet.) (holding that carelessness or error in completing or failing to complete juror information card is race-neutral reason); *see also Newsome v. State,* 829 S.W.2d 260, 266 (Tex. App.—Dallas 1992, no pet.) (same).

9

*Purposeful Discrimination*

If the State provides a race-neutral explanation for its strikes, the defendant has the burden to rebut the State's explanation or to show the explanation was merely a sham or pretext. *See Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). In order to prevail, the defendant must persuade the trial court by a preponderance of the evidence that the allegations of purposeful discrimination are true. *Williams v. State*, 767 S.W.2d 872, 874 (Tex. App.—Dallas 1989, pet. ref'd). A defendant does not meet this burden by merely disagreeing with the State's explanation for its strike. *Webb v. State*, 840 S.W.2d 543, 544 (Tex. App.—Dallas 1992, no pet.). A party's failure to offer any real rebuttal to a proffered race-neutral explanation may be fatal to his claim. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). Here, appellant offered no evidence to rebut the race-neutral reasons given by the State.

With specific reference to veniremember number 16, which appellant characterized as "the most troubling of the three," defense counsel suggested the possibility that the veniremember was a "railroad engineer," which might not be inconsistent with a high-school education. But this comment was not sufficient for appellant to carry his burden to prove, by a preponderance of the evidence that the prosecutor's stated reason for the strike was a pretext. The information that this veniremember was a retired engineer was not revealed until after the prosecutor

10

had already completed his voir dire examination, thus depriving him of the opportunity to ask questions to clarify what he perceived as a discrepancy in the answers. In explaining his reason for the strike, the prosecutor made reference to his "sheet," in which he had written down the veniremember's former occupation—"engineer"—along with question marks denoting a concern in light of the information from the juror information car's indication that his highest level of education completed was high school. The trial court was in a superior position to evaluate whether the prosecutor's explanation was genuine. Appellant did not cross-examine the prosecutor to more fully develop the record as to the rationale for his strikes, and he offered no proof that the prosecutor's inference of conflicting information from veniremember number 16 was implausible or incorrect. Even if the prosecutor's stated reason had been factually mistaken, that alone would not be enough to prove pretext. *See Grant v. State*, 325 S.W.3d 655, 660 (Tex. Crim. App. App. 2010) ("[T]he reason for a peremptory strike need not actually turn out to be correct."); *Johnson*, 68 S.W.3d at 649 ("It is not enough merely to show that a proffered explanation turns out to be incorrect."). The credibility of the prosecutor's representation about his rationale is a matter "peculiarly within the trial court's province," and the correctness of that reason is irrelevant. *See Grant*, 125 S.W.3d at 660 (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208 (2008)).

11

Having reviewed the entire record, we conclude the trial court's decision to deny appellant's *Batson* motion was not clearly erroneous. The State provided racially-neutral explanations for its use of peremptory challenges, and appellant failed to carry his burden to show that the stated reasons were pretextual. The trial court was in the best position to assess the genuineness of the State's assertions regarding the strikes. Such an assessment would rely on a number of intangible judgments made by the trial court. *See Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040–41 (2003). Giving, as we must, deference to the trial court's ruling, we do not have a "definite and firm conviction that a mistake has been committed." *See Guzman v. State*, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002).

We overrule appellant's first issue.

## LESSER-INCLUDED OFFENSE

Appellant was charged with, and the jury was instructed on, the offense of capital murder. A person commits the offense of capital murder if he intentionally commits murder "in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat[.]" TEX. PENAL CODE ANN. §19.03(a)(2) (Vernon Supp. 2013). Here, the aggravating offense alleged was aggravated sexual assault. TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (2)(B). (Vernon Supp. 2013).

In his second issue, appellant argues the trial court erroneously denied his request for a jury charge on the lesser-included offense of murder. Specifically, appellant alleges that he "requested a lesser included offense of murder without the aggravating factor of the Aggravated Sexual Assault[2] based on the premise that [he] did not know how old the victim was[.]" Put another way, appellant argues that because he "had a mistake of fact defense as to the Aggravated Sexual Assault," the jury could have believed that he was guilty only of the lesser-included offense of murder, without the aggravating felony of aggravated sexual assault.

*Standard of Review and Applicable Law*

We use a two-step test to determine whether appellant was entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). We first determine whether murder is a lesser-included offense of capital murder by comparing the statutory elements of the greater offense and any descriptive averments in the indictment with the statutory elements of the potential lesser-included offense. *Sweed*, 351 S.W.3d at 68; *Hall v. State*, 225 S.W.3d 524, 535–36

---

[2]  Sexual assault of a child under the age of 14 is an aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (2)(B). A murder committed during the course of an aggravated sexual assault elevates the crime of murder to capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

(Tex. Crim. App. 2007). This inquiry is a question of law. *Hall*, 225 S.W.3d at 535. If this threshold is met, the second step then requires that we determine if there is some evidence in the record that would have permitted the jury to rationally find that if the defendant was guilty, he was guilty only of the lesser-included offense of murder. *Id.* at 536; *Guzman*, 188 S.W.3d at 188–89; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge, but the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Hall*, 225 S.W.3d at 536; *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). Although the threshold showing required for an instruction on a lesser-included offense is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before a lesser-included offense instruction is warranted. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

Here, the parties do not dispute the first step of the test to determine whether appellant was entitled to an instruction on a lesser-included offense. Therefore, we will assume without deciding that the first step of the analysis is satisfied (i.e., that the lesser-included offense of murder is included within the proof necessary to establish the charged offense of capital murder). *See Sweed*, 351 S.W.3d at 68.

Instead, appellant argues that because he believed that the victim was over 18 years of age, he had a mistake of fact defense as to the aggravating felony that elevated the murder to capital murder, and there was some evidence that if guilty, he was guilty only of murder. We disagree.

> In prosecutions for sexual assault and aggravated sexual assault the defendant need not know that the victim is a child, and a child cannot consent to sexual acts. These are all strict liability offenses when it comes to child victims. Therefore, we have long held that even a very reasonable mistake of fact with respect to the child victim's age is not a defense to sex offenses.

*Ex parte Burns*, No. WR-69222-03, 2012 WL 243686 at *4 (Tex. Crim. App. Jan. 25, 2012) (not designated for publication) (Cochran, J., concurring); *see also Vasquez v. State*, 622 S.W.2d 864, 865–66 (Tex. Crim. App. [Panel Op.] 1981) (declining to apply mistake-of-fact defense to sexual assault of child). Because there is no mistake-of-fact defense to the charge of aggravated sexual assault, appellant's professed belief that the victim was over 18 does not create "a potential gap in the proof on the Aggravated Sexual Assault," as alleged by appellant in his brief. As such, there is nothing in the record that would permit a rational jury to conclude that no aggravated sexual assault of a child had occurred, thus appellant could not have been found guilty only of murder.

*Jury Nullification*

Appellant also argues that, even if there is no mistake-of-fact defense to aggravated sexual assault of a child, he should have been allowed to argue that

15

"appellant did not appreciate the capital nature of the offense." Essentially, appellant claims that he should have been able to tell the jury that they had the power to nullify the law on the mistake-of-fact issue so that justice could be done. Although jury nullification exists in our judicial system, there is no constitutional right to jury nullification, and there is no constitutional requirement that the jury be instructed on nullification. *Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996); *Stefanoff v. State*, 78 S.W.3d 496, 502 (Tex. App.—Austin 2002, pet. ref'd); *Mouton v. State*, 923 S.W.2d 219, 221 (Tex. App.—Houston [14th Dist.] 1996, no pet.). As such, the trial judge did not err by refusing to permit appellant to argue in favor of jury nullification. *See Williams v. State*, No. 05-06-00797-CR, 2007 WL 914754 at *5 (Tex. App.—Dallas Mar. 28, 2007, no pet.) (not designated for publication) (holding trial court did not err in refusing to allow defendant to argue jury nullification).

Because the trial court did not err in refusing to submit the lesser-included offense of murder to the jury, and appellant was not entitled to argue for jury nullification, we overrule appellant's second issue on appeal.

16

**CONCLUSION**

We affirm the trial court's judgment.


                                              Sherry Radack
                                              Chief Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Do not publish.