**Marcus REDDICKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–98–00279–CR.**

Court of Appeals of Texas, Dallas.

June 23, 1999.

Jeanine Howard, Dallas, for Appellant.

Kenneth Jefferson Bray, Asst. Dist. Atty., Dallas, for State.

Before Justices OVARD, MORRIS, and WRIGHT.

## OPINION

### CAROLYN WRIGHT, Justice.

Marcus Reddicks appeals his conviction for robbery. After the jury found appellant guilty, the trial court assessed punishment, enhanced by a previous felony conviction, at forty years' confinement.[1] In a single point of error, appellant contends that the trial court erred by overruling his objection to the State's use of a peremptory challenge. We overrule appellant's point of error and affirm the trial court's judgment.

### Batson[2] Challenge

Appellant contends the trial court erred in overruling his objection to the State's use of a peremptory challenge. Appellant maintains that the record from the *Batson* hearing affirmatively shows that the State engaged in purposeful discrimination and the trial court erred in concluding otherwise. We disagree.

When reviewing a *Batson* challenge, we examine the record in the light most favorable to the trial court's ruling. *See Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App.1988). We reverse the trial court's ruling only when it is clearly erroneous. *See Esteves v. State,* 849 S.W.2d 822, 823 (Tex.Crim.App.1993); *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). A ruling is clearly erroneous when, after searching the record, we are left with the "definite and firm conviction that a mistake has been committed." *Hill v. State,* 827 S.W.2d 860, 865 (Tex. Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). If the trial court's ruling is supported by the record, including the voir dire, the prosecutor's explanation of its peremptory challenges, appellant's rebuttal, and any impeaching evidence, the trial court's ruling is not clearly erroneous. *See Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

To challenge the State's use of peremptory strikes under *Batson,* a defendant must first make a prima facie showing that the State exercised peremptory strikes on the basis of race. *See Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *see also Harris,* 827 S.W.2d at 955. Once a defendant makes a prima facie showing of purposeful discrimination, the State must come forward with a race neutral explanation for striking the jurors in question. *See Batson,* 476 U.S. at 97–98, 106 S.Ct. 1712; *Harris,* 827 S.W.2d at 955; *Johnson v. State,* 959 S.W.2d 284, 289 (Tex.App.-Dallas 1997, pet. ref'd). The State must give clear, legitimate, and reasonably specific reasons for striking particular jurors. *Whitsey v. State,* 796 S.W.2d 707, 713 (Tex. Crim.App.1990) (op. on reh'g). If the State provides a race neutral explanation for its strikes, the defendant must then rebut the State's explanation or show the explanation was merely a sham or pretext. *See Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). The defendant has the ultimate burden to persuade the trial court by a preponderance of the evidence that the allegations of purposeful discrimination are true. The burden of persuasion remains with, and never shifts from, the opponent of the strike. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Johnson,* 959 S.W.2d at 290.

In reviewing the explanations given by the State for challenging a particular juror, we look at the facial validity of the State's explanation. Unless a discriminatory intent is inherent in the State's explanation, the reasons offered will be deemed race neutral. *Hernandez,* 500

---

1. Although appellant was indicted for aggravated robbery, the jury found appellant guilty of the lesser-included offense of robbery.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

U.S. at 360, 111 S.Ct. 1859. Striking a potential juror based on a rating for prior jury service may constitute a race neutral explanation for the exercise of a peremptory strike. *See Webb v. State,* 840 S.W.2d 543, 546 (Tex.App.-Dallas 1992, no pet.); *Ivatury v. State,* 792 S.W.2d 845, 848 (Tex. App.-Dallas 1990, pet. ref'd).

 In this case, appellant and the prosecutor each delivered a strike list to the trial court following voir dire. Appellant objected to the State's use of peremptory strikes on five members of the venire: Juror No. 3, Juror No. 17, Juror No. 25, Juror No. 28, and Juror No. 29. The trial court asked for and the prosecutor gave his reasons for striking the potential jurors. Thus, we need not consider the preliminary issue of whether appellant made a prima facie case. *See Hill,* 827 S.W.2d at 865 (review of prima facie case is not necessary where prosecutor has articulated reasons for the challenged strike). On appeal, appellant complains about only one of the State's five peremptory strikes, Juror No. 29, Evelyn Washington, an African–American female.

In response to appellant's objections, the prosecutor explained that he struck Washington because:

Number 29, Ms. Washington, was also rated as a fair juror on her previous jury service.

\* \* \*

That was the only reason I have written down here on Ms. Washington. And she mentioned, when Mr. Allen was talking to her, that the jury that she sat on was a drug jury and that's, in fact, what the records reflect, that it was a possession with intent to deliver and the jury gave a probated sentence on that and she was marked down on our record as a fair juror in that case.

The prosecutor then added that he also struck Juror No. 14, a Caucasian male, because he had been previously rated as a bad juror and Juror No. 46, a Caucasian female, for being a fair juror on the State's rating system. A rating for prior jury service is a facially valid reason for the exercise of a peremptory strike. *See Webb,* 840 S.W.2d at 546; *Ivatury,* 792 S.W.2d at 848. Thus, the burden shifted back to appellant to rebut the State's explanation or to show the explanation was merely a sham or pretext. *See Williams,* 804 S.W.2d at 101.

On cross-examination, the prosecutor explained why he did not question Washington about her previous jury service as follows:

I saw no reason to ask her any questions. I had written down what the case was, the case number that she was a juror on, the nature of the offense and the sentence that jury gave and the rating of the juror. Having the ratings of the prosecutors in the past and having been a prosecutor for twelve years, I think probation for a possession with intent to deliver is not a good, is not a good sentence, and so I have no reason to quarrel with the rating.

Defense counsel then asked the prosecutor for the records regarding the rating system. The prosecutor explained that he only had notations written on the "juror information cards that the investigator took upstairs and got the information off of the computer." Over the prosecutor's "work product" objection, the juror information cards were admitted into evidence. Defense counsel did not cross-examine the prosecutor about the notations on the juror information cards. Nor did defense counsel attempt to call the previous prosecutor who actually rated Washington. Defense counsel did, however, cross-examine the prosecutor about the rating system as follows:

[Defense Counsel]: I would like to ask [the prosecutor] if he knows how those rating categories are defined; in other words, what would fair mean?

[Prosecutor]: I mean it's purely a subjective judgment on the part of whoever

the prosecutor is that did the jury selection. Frequently they go back in the back and when they talk to the jurors they may find that the jury came up with a verdict but one juror was very hard to convince. One juror may have held out for a low sentence in comparison to the rest of the jurors who were wanting a high sentence. There are any number of reasons that they could do that.

The Court: [I]s the purpose of that rating system to help other prosecutors avoid putting on a jury people who have not been good jurors in the past?

[Prosecutor]: Yes, sir. The point—and every time I pick a jury I make a rating system. I rate the jurors myself. And if a jury, for example, goes in the back and the jury hangs and if a juror is sitting in this courtroom is one of the jurors who was hanging that jury up, then I as a prosecutor do not want to put that juror on another jury panel.

If a case was regarded by the prosecutor who was trying the case as one that warranted a speedy verdict, that everybody in the courthouse would have regarded as a simple straightforward case and the jury spent several days out there and we find out that it was one or two people on the jury that was hanging that thing up forever and ever, then those are not jurors that I want to put on a future jury.

The Court: But your record does not indicate what the criticism of these particular jurors was?

[Prosecutor]: No, in these cases it does not.

\* \* \*

[Defense Counsel]: You will admit it's a purely subjective means that were made by the members of the DA's office; is that right?

[Prosecutor]: That's correct.

[Defense Counsel]: And you have no personal knowledge, do you, sir, as to what basis was used to grade these particular jurors, do you?

[Prosecutor]: No basis, to my knowledge, exists anywhere.

[Defense Counsel]: So it could have been that these people were given fair juror ratings or whatever based on their color or their nationality or their religion.

[Prosecutor]: That is not done.

[Defense Counsel]: You can't attest to that one way or the other since you didn't do it.

[Prosecutor]: Since I did not do it, no. I can only state that there is no practice like that in this office.

On appeal, appellant contends that the record shows the prosecutor's explanation was a pretext for racial bias, because Washington's juror information card does not support the prosecutor's statement that she gave probation in a possession with intent to deliver case. Rather, the juror information card indicates that Washington was on a jury which sentenced the defendant to *seventy-five years' confinement* for possession with intent to deliver. Thus, argues appellant, the State's explanation was clearly a pretext and the trial court erred in concluding otherwise.

Appellant's argument, however, shifts the focus from the prosecutor's stated reason for striking Washington, that she was "rated as a fair juror," to the prosecutor's admittedly erroneous speculation about the basis for Washington's rating. The prosecutor stated that he struck Washington solely because she was rated "fair" after her previous jury service. On cross-examination, he speculated that another prosecutor rated her in that manner because she was on a jury which gave probation in a possession with intent to deliver case. Although we agree with appellant that the record does not support the prosecutor's speculation, we cannot agree that it necessarily follows that the record does not support the prosecutor's stated explanation that he struck Washington solely because she was rated a "fair" juror. To the

contrary, the prosecutor unequivocally stated that the ratings are purely subjective and he did not know why the former prosecutor rated Washington as fair. It was appellant's burden to rebut the prosecutor's stated reason for striking Washington. The record shows that the prosecutor struck not only Washington, but also two Caucasian potential jurors, on the basis of their ratings of "bad" and "fair" for previous jury service. Thus, on this record, we cannot conclude that the trial court's determination that appellant failed to meet his burden is clearly erroneous.

Even so, as in *Webb*, we once again caution the State that we do not condone the use of lists by prosecutors that give no explanation for categorization of previous jury service or do not state any criteria for inclusion on the lists or in a particular category. *See Webb*, 840 S.W.2d at 546. Particularly troubling in this case is the prosecutor's failure to question Washington about her previous service and his inaccurate assessment of why the previous prosecutor rated her as he did. We again expressly caution the State that we recognize the potential misuse of such lists. *See id.* The use of this type of list too easily allows the possibility of misuse by an unscrupulous prosecutor wishing to circumvent the *Batson* issue. *Id.* In this case, however, the record does not support such a finding. Its use in this case is at best offensive to a well-meaning juror who honorably fulfilled her jury service. Thus, although we disapprove of the use of such lists, given the applicable standard of review and the prosecutor's use of the jury rating to strike other potential jurors of a different race and gender, we cannot conclude that the trial court's determination that appellant failed to meet his ultimate burden of proving purposeful discrimination was clearly erroneous. We overrule point of error one.

We affirm the trial court's judgment.

