Affirmed and Memorandum Opinion filed April 3, 2003









Affirmed and Memorandum Opinion filed April 3, 2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01268-CR

____________

 

ROGER FITZGERALD DUNN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 361st District Court

Brazos County, Texas

Trial Court Cause No. 28,382-361

 



 

M E M O R A N D U M   O
P I N I O N

A jury found appellant Roger Fitzgerald Dunn guilty of the
felony offense of delivery of a controlled substance of less than one
gram.  See Tex. Health & Safety Code Ann. ' 481.112(b) (Vernon Supp. 2003).  Appellant elected to have the court assess
punishment, and the court sentenced appellant to two years in a state jail facility
of the Texas Department of Criminal Justice, with the sentence to run
consecutively to his sentence in case number 21,207-361.  In a single issue, he contends the trial
court “abused its discretion” in denying his Batson challenge to the
State=s use of a peremptory strike.  See Batson v. Kentucky, 476 U.S. 79,
106 S. Ct. 1712 (1986).  We affirm.









PROCEDURAL BACKGROUND[1]

At the close of voir dire, the court and the parties
identified the following jurors as belonging to a protected class under Batson:
veniremembers 3, 23, and 25 (African-American); 36 (Asian-American); 4, 14, 38
(Hispanic).  Appellant initially objected
to the State=s strikes against veniremembers 3, 4,
23, and 36.

As he does on appeal, appellant subsequently objected only to
the State=s exercise of its peremptory strike
against veniremember number 23, Willie Mae Jenkins-Greg, an African
American.  The prosecutor explained his
strike against Jenkins-Greg as based on Jenkin-Greg=s record from previous grand jury
duty:

Juror number 23, Jenkins-Greg, previously admitted a
State=s Pretrial Exhibit 1, Ms. Jenkins served on a grand
jury.  I believe, it=s the April term of the 85th District Court Grand Jury
of 1989.  And the internal notes of the
District Attorney=s office -- which we commonly keep on grand juries --
stated, I believe, not word-for-word on that exhibit that she not be used as a
juror.

 

State=s Exhibit 1 comprised a list of partially redacted names,
with the following full entry: “Jenkins, WillieMae 85th GJ 0489 Term DO NOT USE
ON JURY.”  Following the prosecutor=s explanation, defense counsel
renewed an earlier objection to the exhibit. 
The earlier objection was based, in part, on hearsay, and if the court
was going to admit the exhibit, the defense “should have a full fledged hearing
on the underlying basis.  I should have
the opportunity to cross-examine what material it is that allows this
designation to not take.”








The prosecutor then testified the exhibit was kept as part of
the practice in the course of business in the district attorney=s office.[2]  The prosecutor further explained, “There are
notations in the jury evaluations made after any jury trial and after grand
juries are excused . . . [T]he ratings are made by a person with
personal knowledge of the information given.” 
When the State picks a jury, one of the lawyers in the case checks the notations
on file against the names on the jury list in the case being tried.  The prosecutor did not know why the notation,
“do not use on jury,” was after Jenkins-Greg=s name, but he did “know whoever made
that notation would have done so with relevant knowledge, and I should take
advantage of it and listen to it.”

In arguing the State=s explanation was not race-neutral,
defense counsel objected to the lack of any underlying basis for the notation:

Judge, I would --
my argument solely as to the -- as to juror 23, Willie Mae Jenkins-Greg, we
have been - - you have been provided an exhibit from the District Attorney=s Office that we have no underlying basis for knowing
how it was generated.

 

Now, I understand
it=s in front of the Court for purposes of the motion
hearing and the Court can give what weight to that exhibit as the Court wishes
to do -- wishes to give.  But there is
nothing in evidence right now other than that document that provides a race
neutral explanation for why this juror was struck.  Okay.

 

My argument is that
document provides no underlying reason for the reason why that the District
Attorney=s office would not take her as a juror.  I mean, for all we know there may be -- we
don=t know the basis for this notation contained on
Exhibit 1.

 

My argument is
simply that the Court should give little or no weight to the information that=s contained in Exhibit 1, although properly before the
Court and properly to be considered.

 

If, for example, there was a
notation, “Don=t take as juror because she voted no bill or not voted
for no bill because she requires too much credibility, she requires too much
from the police officers.”  There is
nothing on that document that provides any type of basis for the reason why
that juror would not be a suitable juror.

 








And on that basis,
Judge, we would argue that at least -- I=m
confining and focusing my argument solely to juror No. 23, Willie Mae
Jenkins-Greg, and would state that for our record for appellate purposes that a
sufficient race neutral reason has not been stated for the exercise of the
strike.

 

The prosecutor responded the notation was based on
Jenkins-Greg=s “track record,” and that was a
race-neutral reason.  The court agreed;
and, without further analysis or additional argument by defense counsel, the
court overruled the Batson challenge.

DISCUSSION

The Equal Protection Clause of the United States Constitution
prohibits a party from using peremptory strikes to exclude persons from a jury
solely because of  race.  See Powers v. Ohio, 499 U.S. 400, 409,
111 S. Ct. 1364, 1370 (1991).  To raise
this equal protection claim, the moving party must first make a prima facie
showing that the striking party exercised a peremptory challenge on the basis
of race.  Hernandez v. New York,
500 U.S. 352, 358, 111 S. Ct. 1859, 1866 (1991).  Once the moving party makes a prima facie
case, the burden shifts to the striking party to articulate a race‑neutral
explanation for striking the juror in question. Purkett v. Elem, 514
U.S. 765, 767, 115 S. Ct. 1769, 1770 (1995).

A race‑neutral explanation is simply one based on
something other than the race of the juror. 
Hernandez, 500 U.S. at 360, 111 S. Ct. at 1866.  The explanation must relate to the particular
case to be tried, but need not rise to a level justifying the exercise of a
challenge for cause. Batson, 476 U.S. at 98, 106 S. Ct. at 1724.  Moreover, the explanation need not be
persuasive, or even plausible.  Purkett,
514 U.S. at 768, 115 S. Ct. at 1771.  The
issue is the facial validity of the striking party=s explanation.  Id. 
Unless a discriminatory intent is inherent in that explanation, a court
will deem the reason offered race‑neutral.  Id.








Once the striking party gives a race‑neutral reason,
the trial court must determine whether the moving party has carried its burden
of proving purposeful discrimination.  Id.
at 768.  There will seldom be much
evidence bearing on that issue, and the best evidence will often be the
demeanor of the attorney who exercises the strike.  Hernandez, 500 U.S. at 365, 111 S. Ct.
at 1869.  Factors the trial court may
consider to determine whether the striking party=s explanation for a peremptory
challenge is merely a pretext include the following:  (1) the reason given not being related to the
facts of the case; (2) a lack of questioning or meaningful questioning of the
challenged juror; (3) disparate treatment, i.e., persons with the same
or similar characteristics as the challenged juror not being struck; (4)
disparate examination of venire members, i.e., questioning of a
challenged juror to evoke a certain response without the same question being
asked of other panel members; and (5) an explanation based on a group bias
where the trait is not shown to apply to the challenged juror
specifically.  Whitsey v. State,
796 S.W.2d 707, 713B14 (Tex. Crim. App. 1989).

Because the trial court=s findings turn largely on its
evaluation of credibility, a reviewing court should ordinarily give those
findings great deference.  Hernandez,
500 U.S. at 365, 111 S. Ct. at 1869; Ladd v. State, 3 S.W.3d 547, 563
(Tex. Crim. App. 1999). We should not overturn a trial court=s finding on the issue of
discriminatory intent unless the trial court=s determination is clearly erroneous.
Hernandez, 500 U.S. at 369, 111 S. Ct. at 1871; Ladd, 3 S.W.3d at
563. Where there are two permissible views of the evidence, the trial court=s choice between them cannot be
clearly erroneous. Hernandez, 500 U.S. at 369, 111 S. Ct. at 1871.

In the present case, the striking party, the State,
articulated reasons for the challenged peremptory strike, and the trial court
implicitly ruled on the ultimate question of intentional discrimination.  We therefore need not review the issue of
whether appellant met his burden at the first stage by establishing a prima
facie case.  Hill v. State, 827
S.W.2d 860, 865 (Tex. Crim. App. 1992).








We conclude the prosecutor=s reasonCthat he relied on departmental notes
resulting from Jenkin-Greg=s prior grand jury serviceCis a facially valid, race neutral,
explanation.  See Reddicks v. State,
10 S.W.3d 360, 363 (Tex. App.CDallas, 1999, no pet.); Bausley v. State, 997 S.W.2d
313, 316 (Tex. App.CDallas 1999, pet. ref=d). 
The burden then shifted to appellant to show the prosecutor=s explanation was a sham or a pretext
for a racially impermissible purpose.  Reddicks,
10 S.W.3d at 363; see also Payton v. State, 830 S.W.2d 722, 727 (Tex.
App.CHouston [14th Dist.] 1992, no pet.)
(stating, if prosecutor articulates race‑neutral reasons for strikes,
defendant may offer evidence showing prosecutor=s reasons are merely sham or
pretext).

To meet his burden, a defendant may offer evidence showing
that the prosecutor=s explanations are merely pretextual.  See Keeton v. State, 749 S.W.2d 861,
868 (Tex. Crim. App. 1988).  It is at
this point that, had appellant requested to examine the prosecutor whose
opinions were the basis for Jenkin-Greg=s exclusion, the trial court arguably
would have erred in denying that request. 
See Bausley, 997 S.W.2d at 317B18. 
In his earlier hearsay objection to State=s exhibit 1 (the document with the “do
not use notation”) appellant raised the issue of  having “the opportunity to cross-examine what
material it is that allows this designation to not take.”  He also skirted the issue in his criticism of
the prosecutor=s explanation.  Nevertheless, after the burden shifted back
to him, appellant never specifically requested that the court give him the
opportunity to introduce evidence refuting the prosecutor=s race-neutral explanation, whether
by examining the person making the notation or by introducing evidence establishing
any of the other Whitsey factors set forth above.

Appellant did not meet his burden of establishing purposeful
discrimination in the State=s peremptory strike of veniremember Jenkins-Greg.  We overrule appellant=s sole issue.




We affirm the judgment of the
trial court.

 

 

 

 

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed April 3, 2003.

Panel consists of
Justices Anderson, Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The facts of
the underlying offense are unnecessary to the analysis.





[2]  Defense
counsel waived the oath for the prosecutor=s
testimony.