Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NOS. 14-07-00906-CR,
14-07-00907-CR

____________

 

LARRY LEE WAGNER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause Nos. 1114708,
1114709

 



 

M E M O R A N D U M   O P I N I O N








Appellant Larry Lee Wagner appeals two convictions for
aggravated sexual assault against two children, claiming the following: (1) the
younger complainant lacked competency to testify, and, therefore, her testimony
should have been excluded; (2) the trial court erred in excluding a forensic
interviewer=s prior inconsistent statement, and, therefore, denied
appellant the opportunity to confront and cross-examine his accuser; (3) the
trial court committed reversible error in allowing representatives from Child
Protective Services and the Children=s Assessment
Center to offer purported opinions on the child complainants= credibility; (4)
the State failed to show that a prior out-of-state judgment was available for
enhancement of appellant=s punishment for his convictions in this
case; and (5) the trial court erred in cumulating the sentences without a
written order.  We affirm.

I.  Factual and Procedural Background

By two separate indictments, appellant was charged with
aggravated sexual assault of a child, involving two sisters, Anna and Betsy.[1] 
Both complaints alleged that appellant placed toys inside their vaginas, which
the girls referred to as their Acoo-coos.@  The conduct was
alleged to have occurred on or before June 21, 2005.  Shortly thereafter, on
June 30, 2005, the children participated in a forensic interview with employees
from the Children=s Assessment Center.  At that time, Anna,
the older girl, was five years old[2]
and Betsy, the younger, was three years and four months old.[3] 
Neither child made outcry that appellant sexually abused them; however,  Betsy
answered affirmatively when asked if a grown-up had sexually abused them and
responded that Asomebody@ had sexually
abused her.  In another forensic interview conducted three and a half months
later, on October 13, 2005, both girls disclosed that appellant had placed toys
in their Acoo-coos.@

Appellant pleaded Anot guilty@ to the charged
offenses.  Appellant stood trial on both charges in a single trial in September
2007, following a hearing to determine the children=s competency to
testify at trial.  The jury found appellant guilty as charged for each
indictment.  The indictment for each charge contained an enhancement paragraph
alleging a prior out-of-state conviction for corruption of a minor.  After
finding the enhancement paragraph in each case true, the jury assessed
appellant=s punishment at confinement for life for each
offense.  The trial judge ordered the sentences to run consecutively.  In five
issues, appellant now challenges his convictions.








II.  Issues and Analysis

A.      Was the
younger child complainant competent to testify?

In his first issue, appellant complains that Betsy, the
younger child, was not competent to testify about the sexual abuse and that her
testimony should have been excluded.  Though appellant does not challenge Anna=s competency,
appellant argues that Betsy=s two 2005  forensic interviews, conducted
when she was between three and four years old,[4]
as well as her testimony at the competency hearing and at trial, when she was
five years old, demonstrated that she was incompetent to testify about the
alleged incident of sexual abuse.  Appellant complains Betsy could not recall
significant information about the time frame of the charged offense and that
the trial court abused its discretion in determining that she was competent to
testify.

Prior to voir dire, appellant moved for the trial court to
assess the children=s competency to testify about the alleged
sexual abuse.  Each child testified briefly at the pre-trial hearing.  The
trial court then reviewed videotapes of the children=s interviews
conducted in June 2005 and October 2005 by forensic investigators at the
Children=s Assessment
Center.  After reviewing videotapes and after hearing the children=s pretrial
testimony, the trial court found that both Anna and Betsy were competent to
testify at trial.  Both girls testified at trial.

A trial court=s determination of
whether a child witness is competent to testify will not be disturbed on appeal
absent an abuse of discretion.  Dufrene v. State, 853 S.W.2d 86, 88
(Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  A reviewing
court must review the child=s entire testimony to determine if the
trial court abused its discretion.  Id.








As a general rule, a witness is presumed to be competent to
testify.  Tex. R. Evid. 601; Dufrene,
853 S.W.2d at 88.  A child is not competent to testify when, after an
examination by the trial court, the child does not appear Ato possess
sufficient intellect to relate transactions@ to which the
child will testify.  Tex. R. Evid.
601(a)(2); Dufrene, 853 S.W.2d at 88.  When, as in this case, a party
challenges the competency of a child witness, the trial court must be assured
that the child has (1) the ability to intelligently observe the events in
question at the time of the occurrence, (2) the capacity to recollect events,
and (3) the capacity to narrate the events.  Dufrene, 853 S.W.2d at 88B89.  With respect
to the child=s capacity to narrate events, the child witness must
be able to understand the questions asked and to frame intelligent answers to
those questions.  See Watson v. State, 596 S.W.2d 867, 870 (Tex. Crim.
App. 1980); Hollinger v. State, 911 S.W.2d 35, 39 (Tex. App.CTyler 1995, pet.
ref=d).  Although the
child need not understand the Aobligation of the oath,@ the trial court
must impress the child with the duty to be truthful.  See Dufrene, 853
S.W.2d at 88.  There is no precise age under which a child is deemed
incompetent to testify.  See Fields v. State, 500 S.W.2d 500, 502B03 (Tex. Crim.
App. 1973).  Competency is determined on a case-by-case basis.

Appellant complains of Betsy=s competency to
testify based on her forensic interviews in June 2005 and October 2005, citing
Betsy=s alleged Ahabit of giving
fanciful responses.@  For example, appellant complains of the
following responses, among others, in the June 2005 interview:

$                  
Betsy responded
that she was three days old when asked about her age;

$                  
Betsy said she
lived with her mother, but could not give her mother=s name;

$                  
When asked to
give an example of a girl, Betsy was non-responsive;

$                  
Betsy appeared
overwhelmed and non-responsive when asked about differences between a truth and
a lie;

$                  
When asked if
someone touched her in a private place, Betsy stated that her sister, Anna, had
done so;

$                  
Betsy claimed
her brother touched her Acoo-coo,@ the term she uses for her vagina,
with a belt;








$                  
She denied that
any grown-up had touched her Acoo-coo;@ although she asserted that her
brother made her private parts bleed, then he pushed her leg and it bled again.

In the first forensic interview, conducted in June 2005,
Betsy confirmed her name and age of three.  Although her responses, at times,
were difficult to discern, she explained with whom she lived, stated that she
attended day care, and named some of the activities in which she participated
while in day care and at home.  Betsy and the interviewer discussed the
differences between truthful statements and lies.  Though Betsy correctly
identified the characterization that she is a girl as being Atrue,@ she incorrectly
said that a statement identifying her by her own name was false.  She also said
that appellant was her father, even though he was only the boyfriend of Betsy=s mother.  She
identified parts of the body on a doll, naming the Acoo-coo@ as the part of
the body Awhere you pee.@  She indicated
that her brother and Anna each had touched her Acoo-coo.@  She nodded
affirmatively when asked whether a grown-up touched her Acoo-coo.@  She did not name
the person who touched her, indicating only that Asomebody@ touched her.  She
followed with a narrative of how her private parts hurt and bled and recounted
how her brother (who is four years older) pushed her leg and spanked her. 








In a second forensic interview, conducted in October 2005,
Betsy discussed the differences between truthful statements and lies and agreed
to talk only about true things.  When asked, she responded correctly with her
name and age.  She talked about two events involving her sister and mother. 
When she talked about appellant, she repeated several times that he put toys in
her Acoo-coo@ and indicated
that he put Aa lot of them@ in her Acoo-coo.@  She showed the
interviewer, using dolls, the body parts she called the Acoo-coo@ and Abooty.@  Although her
narrative of the events, at times, was difficult to understand, she recounted
that ALarry@ placed toys in
her Acoo-coo@ and indicated
Anna was involved, too.  In reference to her Acoo-coo,@ she said she
screamed and hollered.  She indicated her Abooty@ still hurt.  She
talked about Anna extensively in the interview, indicating that Anna was mean
and hit her, touched her Abooty,@ and engaged in
fights.  Betsy explained that when she got in trouble at her mother=s house, she Agot a whipping.@  When she talked
about appellant, she stated several times that she Awhupped@ him.  

At the September 18, 2007 pre-trial competency hearing,
Betsy indicated that she was five years old and attended kindergarten, naming
both her school and teacher.  She demonstrated that she was able to distinguish
the difference between a truth and a lie, correctly characterizing the answer
to each question posed to her as being true or a lie, and then explaining why. 
She acknowledged that at home she would get in trouble for telling lies and
agreed to talk about only truthful things in court.  On cross-examination,
Betsy indicated that when she was four years old, she attended school at
Oakwood, and she lived with her Ananna.@  Before living
with her Ananna,@ she recalled living at Janice=s [her mother=s] house when she
was three and attending day care at the time.  She indicated that Janice took
her to day care.  Betsy also indicated that Janice was someone who put toys in
her Acoo-coo.@  Betsy recalled
that she lived with Janice, appellant, and her brother and sister in Janice=s home.  Betsy
testified that she did not remember a number of things including her day-care
teachers= names, a man
named ATim,@ who is purportedly
her father, or the name of a friend with whom she used to live.

At the trial, Betsy again demonstrated her understanding of
the difference between the truth and a lie and agreed to discuss only truthful
matters.  Betsy indicated on a doll the parts she refers to as a Acoo-coo,@ and Abutt,@ which she
affirmed were the private body parts no one should touch.  She identified
appellant in court and explained how he put a ABarbie@ doll, a doll=s head, and a ADora the Explorer@ doll in her Acoo-coo,@ and she bled
afterward.  She indicated that Anna witnessed the incident, that appellant also
put toys in Anna=s Acoo-coo,@ and that Anna
cried.  She indicated that Janice, her mother,[5]
was present during the incident and that Janice took her to day care.  She
testified that appellant, whom she referred to as her father, did not live with
her at the time.  She indicated no one else put toys in her Acoo-coo.@








On cross-examination, Betsy recounted how she used to live
with Janice and that she attended day care at that time.  Betsy did not
remember her teachers= names at day care and testified that she
did not know how she arrived at day care.  She named appellant as her father,
but she also indicated that ATim,@ her purported
father, lived with her at that time.  She recalled that during that time in her
life when she attended Oakwood, she had a room to herself at Janice=s house.  Betsy
testified that it was in this room that the toys, including a doll head and a ADora the Explorer@ doll, were put in
her Acoo-coo,@ although she
could not remember whether it was daytime or nighttime when the incident
occurred.  Betsy testified that Anna and Janice witnessed the incident.  She
could not recall whether any abuse against Anna happened before or after
appellant=s conduct with her.  








Although some of Betsy=s responses showed
some conflict and confusion, her testimony overall indicated sufficient
accuracy in her recollection in that she was able to recall and narrate details
of the event, by giving specific testimony about the location, timing, and
details.  See Long v. State, 770 S.W.2d 27, 29 (Tex. App.CHouston [14th
Dist.] 1989), rev=d on other grounds, 800 S.W.2d 545
(Tex. Crim. App. 1990); see also A.R.S. v. State, No. 14-00-00237-CV,
2001 WL 930806, at *4 (Tex. App.CHouston [14th
Dist.] Aug. 16, 2001, no pet.) (not designated for publication).  Inconsistent
testimony about a specific event affects the child=s credibility, but
not the child=s competency.  See De Los Santos v. State, 219
S.W.3d 71, 81 (Tex. App.CSan Antonio 2006, no pet.); see also
A.R.S., 2001 WL 930806, at *4.  Furthermore, although Betsy had difficulty
answering questions pertaining to collateral matters, a child=s inability to
testify to collateral matters does not affect the child=s competency.  See
Clark v. State, 659 S.W.2d 53, 54B55 (Tex. App.CHouston [14th
Dist.] 1983, no pet.) (providing that three-year-old child=s testimony
demonstrated she understood the incident well enough to describe it even if she
did not use sophisticated language and had difficulty answering questions
pertaining to collateral matters).  In light of Betsy=s answers to the
qualification questions, in the videos and during the proceedings, and her
testimony as a whole, the record demonstrates that Betsy adequately observed
the events she described, recalled the incident with detail, and sufficiently
related the events.  See Dufrene, 853 S.W.2d at 88B89; Long,
770 S.W.2d at 29; see also A.R.S., 2001 WL 930806, at *4. 
Accordingly, the trial court did not abuse its discretion in determining that
Betsy was competent to testify.  See Dufrene, 853 S.W.2d at 88B89.  But even if
she were not, any error in deeming her competent to testify at trial would be
harmless given the other evidence presented at trial.

Assuming arguendo that Betsy was not competent to testify,
on this record we could find no harm as a result of the trial court=s decision to
allow her testimony because the same facts were established by other admissible
evidence introduced without objection.  See Anderson v. State, 717
S.W.2d 622, 628 (Tex. Crim. App. 1986) (AInadmissible
evidence can be rendered harmless if other evidence at trial is admitted
without objection and it proves the same fact that the inadmissible evidence
sought to prove.@).  The record reflects that just before
Betsy testified, Anna testified without objection, giving a detailed account of
appellant=s conduct with both Anna and Betsy.  Anna testified
that she saw appellant put a ABarbie@ doll in Betsy=s Aprivate part,@ just as appellant
did with Anna.  Anna described how Betsy screamed and how appellant=s actions drew
blood.  Anna=s testimony, to which appellant did not object,
established the same information regarding appellant=s conduct with
Betsy.  See id.  Therefore, error, if any, in admitting Betsy=s testimony was
harmless.  See id.  We overrule appellant=s first issue.

B.      Did the trial court err in
excluding evidence of a witness=s prior inconsistent statements?








In appellant=s second issue, he
complains that the trial court erred in limiting the direct examination of a
forensic interviewer, Susan Odhiambo, regarding her interview with Anna in
January 2005.  In that interview, Anna made outcry of sexual abuse against her
minor brother.  Anna made no mention of any sexual abuse by appellant in that
interview.  Appellant complained that the interviewer=s testimony would
demonstrate that as early as January 2005, the child Ahad denied that
appellant had abused her in any way.@  According to
appellant, by not permitting appellant=s trial counsel to
question the forensic interviewer on this matter, the trial court violated the
Texas Rules of Evidence and denied appellant the opportunity to confront and
cross-examine his accusers under the state and federal constitutions.[6] 


We review a trial court=s ruling on the
admissibility of a prior inconsistent statement under an abuse-of-discretion
standard.  Lopez v. State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). 
Under this standard, as long as the trial court=s ruling is within
the zone of reasonable disagreement, a reviewing court will not reverse the
trial court=s decision.  See id.








Appellant called Odhiambo as an adverse witness.  As a
forensic interviewer with the Children=s Assessment
Center, Odhiambo testified that she interviewed Anna and Betsy on June 30, 2005,
for the first time; neither child disclosed any sexual abuse by appellant
during this interview.  According to Odhiambo, the children disclosed
allegations of sexual abuse by appellant in an October 2005 interview.  In
response to a question from appellant=s trial counsel,
Odhiambo denied interviewing the children in January 2005.  After some
discussion regarding whether she previously had interviewed Anna, the trial
court instructed Odhiambo to return the next day after determining whether she
interviewed the children in January 2005.  When appellant=s attorney
attempted to question Odhiambo regarding Anna=s allegations
about her brother in the January 2005 interview, the State objected to the
relevance of the allegations, and the trial court sustained the objection.

At trial the next day, appellant=s trial counsel
made a bill of exception regarding Odhiambo=s recollection of
the January 2005 interview.  Odhiambo admitted, after having reviewed her
records, that she had interviewed Anna in January 2005, after the child made
outcry that she had licked her minor brother=s penis at her
mother=s direction. 
According to Odhiambo, in this January 2005 interview, Anna stated that her
brother touched her vagina.  Appellant complains Anna denied abuse by appellant
as early as January 2005, based on the following exchange:

[DEFENSE ATTORNEY]:  And did [Anna]
make an allegation against any adult person relating to any sexual abuse?

[WITNESS]:                              No,
she did not.

[DEFENSE ATTORNEY]:  Did she talkBdid she ever say that her natural
father, [Tim], was a person that touched her coo-coo in an inappropriate way?

[WITNESS]:                              I
don=t recall anything about her father
touching her.

[DEFENSE ATTORNEY]:  Did you say
something about her brother touching her in an inappropriate way in her
coo-coo?

[WITNESS]:                              She
did.

. . .

[DEFENSE ATTORNEY]:  Did she make
any mention at that point in time about the defendant, Larry Lee Wagner?

[WITNESS]:                              I
believe she said she had two dads and she named Tim and Larry and that=s about it.








[DEFENSE ATTORNEY]:  And did she
make any assertion that Larry Lee Wagner at this point in time had abused her
in any way?

[WITNESS]:                              No,
she did not.

[DEFENSE ATTORNEY]:  Did you give
her a chance to make any accusations about Larry Lee Wagner and her father with
regard to sexual abuse, without leading her?

[WITNESS]:                              I
asked her if anyone had touched her, and she only mentioned [Anna=s brother].

Appellant=s attorney argued,
AThere is a report
and this establishes that pursuant to 38.07(1) and the rules of evidence, her
statements to this witness is [sic] inconsistent with the theory of the State=s case.  And as a
matter of impeachment and as a matter of inconsistent statements, as a matter
of 38.07(1) proffers, this evidence should go before the jury for its
consideration.@  The trial court ruled that Odhiambo should not be
questioned about any previous outcry made by Anna in the January 2005 interview
involving allegations of abuse by her brother, whether Anna made outcry against
appellant at that time, or when Odhiambo first saw Anna in January 2005.

Texas Rule of Evidence 613(a) permits a party to impeach a
witness with a prior inconsistent statement.  Tex.
R. Evid. 613(a); Lopez,
86 S.W.3d at 230.  In order for a statement to be admitted under Rule 613(a),
the trial court must be persuaded that a previous statement of a witness was inconsistent
with her trial testimony.  Lopez, 86 S.W.3d at 230.








According to Odhiambo, in the January 2005 interview with
Odhiambo, Anna identified her minor brother as a person who engaged in sexual
activity with her.  When asked if anyone had touched her, Anna mentioned that
her brother had touched her, she did not address whether appellant had touched
her or whether any person other than her brother had touched her.  Therefore,
appellant is incorrect in asserting that, in January 2005, Anna Adenied that
appellant had abused her in any way@ and Astated that no
adult had sexually abused her.@ Appellant has not demonstrated how Anna=s statements to
Odhiambo are inconsistent with Anna=s statements at
trial and in the videotaped interviews.  After reviewing her records, Odhiambo
admitted interviewing Anna in January 2005 for reasons unrelated to the charged
offense. Odhiambo=s testimony regarding Anna=s statement in
January 2005 that her brother had touched her inappropriately was not
inconsistent with her statements in October 2005 and at trial that appellant
touched her sexually.  See Lape v. State, 893 S.W.2d 949, 955
(Tex. App.CHouston [14th Dist.] 1994, pet. ref=d) (overruling a
complaint that trial court forbade questions of a police officer regarding the
complainant=s mother=s prior accusations
that other people, in addition to the accused, sexually abused the child
complainant).  If taken as true, at most, the testimony about the January 2005
interview may reflect that Anna=s minor brother also had touched her in an
inappropriate way.  See Lape, 893 S.W.2d at 955.  Moreover, to the
degree that appellant complains Anna=s outcry to
Odhiambo in January 2005, regarding her brother, is evidence that Anna
previously had accused another, prior disclosure of incidents of sexual abuse
by a victim are not admissible unless they have been proven false.  See id. at
955B56.  Nothing in
the record suggests that Anna=s January 2005 outcry contained false
allegations or discredits her in any way.  See id. at 955.        








If a trial court=s evidentiary
ruling is reasonably supported by the record and is correct under any theory of
law, then the ruling is within the zone of reasonable disagreement and should
be upheld.  See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990) (op. on reh=g).  Therefore, the trial court did not
abuse its discretion in denying appellant=s request to admit
Odhiambo=s testimony
regarding her January 2005 interview with Anna.  See Lopez, 86 S.W.3d at
231; see also Lape, 893 S.W.2d at 955B56 (providing
that, even if taken as true, an officer=s testimony
regarding other allegations of sexual abuse at the hands of people other than
the accused does not establish that the accusations were false nor would the
officer=s testimony
discredit the complainant=s testimony); Bargas v. State, 252
S.W.3d 876, 899 (Tex. App.CHouston [14th Dist.] 2008, no pet.). 
Accordingly, we overrule appellant=s second issue.

C.      Did the trial court err in
allowing witnesses to offer opinions that purportedly speak to the complainants= truthfulness or constitute Abolstering@?

In his third issue, appellant complains that, despite his
objections, three witnesses each offered an opinion as to the child
complainants= truthfulness, which appellant characterizes as Abolstering.@ 

Under Texas Rule of Evidence 702, if a witness possesses
scientific, technical, or other specialized knowledge that will assist a fact
finder, and if the witness is qualified as an expert by knowledge, skill,
experience, training, or education, then that expert may testify with an
opinion.[7] 
Tex. R. Evid. 702; see Schutz
v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  An expert=s testimony is
admissible when a jury is not qualified Ato the best
possible degree@ to intelligently determine an issue
without the testimony.  See Schutz, 957 S.W.2d at 59 (quoting Duckett
v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990)).  As such,
expert testimony is intended to aid, rather than supplant, a jury=s decision.  Id.
However, Rule 702 does not permit an expert to give an opinion that a
complainant or a class of persons to which the complainant belongs is
truthful.  Yount v. State, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). 
Therefore, expert testimony that offers a direct opinion on the truthfulness of
a child complainant=s allegations is not admissible under Rule
702.  Id.  We review a trial court=s decision as to
whether to allow an expert opinion for an abuse of discretion.  See Gallo v.
State, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).








ABolstering@ is evidence used solely for the purpose of improperly adding
credence or weight to a particular witness or source of evidence Awithout substantively contributing to
make the existence of [a] fact that is of consequence to the determination of
the action more or less probable than it would be without the evidence.@  See Cohn v. State, 849
S.W.2d 817, 819B20 (Tex. Crim. App. 1993); see Rivas v. State, 275
S.W.3d 880, 886B87 (Tex. Crim. App. 2009) (indicating that Abolstering@ has ties to Texas Rule of Evidence
613(c), which involves prior consistent statements, and reiterates principles
of hearsay).  When the additional evidence makes a substantive contribution,
corroborates other evidence, or has an Aincrementally further tendency to
establish a fact of consequence,@ that evidence does not constitute
bolstering.  See Cohn, 849 S.W.2d at 819B20.  Accordingly, as substantive
evidence, an expert may testify that a child exhibits symptoms consistent with
sexual abuse, but that expert witness may not offer an opinion as to the child=s truthfulness.  Id.
at 819.

Appellant first complains of testimony by Rhonda
Washington, a supervisor with Child Protective Services, who was involved in
the case.  Washington testified that after the June 2005 forensic interview,
the children were acting out sexually, making allegations and outcries of
sexual abuse, and disclosing the identity of the abuser.  For this reason, she
ordered a second forensic interview to be conducted in October 2005.  Appellant
complains of the following exchange during her testimony at trial:

[PROSECUTOR]:  Now, at that point in time, did [Child Protective
Services] also make a finding in the case?

[WITNESS]:  Yes.

[PROSECUTOR]:  And what was that?

[WITNESS]:  That sexual abuse did occur.

[PROSECUTOR]:  By the?

[WITNESS]:  The perpetrator known as [appellant]C

[APPELLANT=S TRIAL COUNSEL]:  I object.  This
invades the province of the jury and is certainly hearsay.

[TRIAL COURT]:  Overruled.

[PROSECUTOR]:  You may answer the question.  What was the finding that
[Child Protective Services] made?








[WITNESS]:  We had reason to believeCwhat happens when a referral comes in, it=s either Areason to believe,@ Aunable to determine.@  We noted it as Areason to believe@ that sexual abuse did occur, and the perpetrator noted by
the children was [appellant].

Appellant characterizes Washington=s testimony as
vouching for the complainants= veracity by her testimony that the agency
made a finding that the children told the truth.  Washington did not vouch for
the children=s truthfulness in their allegations or express her
opinion as to whether sexual abuse had occurred.  See Johnson v. State,
970 S.W.2d 716, 720 (Tex. App.CBeaumont 1998, no pet.); see also
Bowers v. State, No. 02-02-00250-CR, 2003 WL 22026428, at *6 (Tex. App.CFort Worth 2003,
pet. ref=d) (concluding Areason to believe@ language did not
comment on the complainant=s truthfulness).  Furthermore, she did not
offer her opinion that appellant was the person who had abused the children.  See
Johnson, 970 S.W.2d at 720.  Rather, Washington testified that her
agency=s investigation
resulted in a conclusion that, based on the girls= accounts, there
was Areason to believe@ that appellant
had sexually abused the children.  See id.; see also Bowers, 2003
WL 22026428, at *6.  In her testimony, Washington provided the agency=s conclusion in
the case and indicated the basis for the conclusion; however, Washington did
not express an opinion as to the girls= truthfulness.  See
Johnson, 970 S.W.2d at 720 (concluding that expert did not express an
opinion as to the credibility of any witness); see also Bowers, 2003 WL
22026428, at *6.  Moreover, this testimony could assist a trier of fact
in determining an issue for which the jury was not qualified to the Abest possible
degree@ in deciding
whether the alleged events occurred.  See Johnson, 970 S.W.2d at 720, 721. 
Therefore, the trial court did not abuse its discretion in admitting
Washington=s testimony.  See id. at 721. 

Appellant next complains of testimony from two therapists
at the Children=s Assessment Center who testified that
Anna and Betsy each offered consistent accounts of the charged offenses.  This
testimony occurred after each child testified about the abuse.  Natalie
Mohashami, Betsy=s play therapist, testified that Betsy=s account of the
abuse was consistent throughout the entire time she treated Betsy, as reflected
in the following exchange:








[PROSECUTOR]:  Did [Betsy] have the ability to convey what had occurred
to her?

[WITNESS]:  Yes.

[PROSECUTOR]:  Has she been consistent during the entire time with her?

[APPELLANT=S TRIAL COUNSEL]:  I object.  This
is justCthis type of testimony--

[TRIAL JUDGE]:  Legal objection only.

[APPELLANT=S TRIAL COUNSEL]:  I object.  It=s based onCit=s based on hearsay and it=s not an exception and it=sC

[TRIAL JUDGE]:  Overruled.

[PROSECUTOR]:  Has she been consistent with you the entire time that
you saw her?

[WITNESS]:  Yes.

Following
this exchange, the State passed the witness.

To the extent that appellant complains Mohashami=s testimony
constitutes hearsay, the witness did not recount what Betsy said during the
therapy sessions.  See Head v. State, 4 S.W.3d 258, 262 (Tex. Crim. App.
1999) (involving an officer=s testimony that other witnesses= statements were
consistent with the complainant=s account).  The witness=s statements did
not lead to any conclusions regarding the substance of Betsy=s out-of-court
statements made to Mohashami during therapy.  See id.  The witness
revealed only that Betsy recounted the same facts about what occurred; she did
not reveal the substance or details of what the facts were or how Betsy=s account was
consistent.  See id.; see also Gauna v. State, No.
03-04-00721-CR, 2006 WL 3841235, at *8B9 (Tex. App.CAustin Dec. 29,
2006, no pet.) (mem. op., not designated for publication) (concluding that
testimony that complainant=s account was consistent, as told to both
an investigator and forensic interviewer, did not violate hearsay prohibition).









To the degree that appellant claims Mohashami=s testimony
constituted a comment on  Betsy=s truthfulness, thereby bolstering the
child complainants= credibility, we consider this argument
along with disputed testimony from another therapist, Sally Totenbier, who
affirmed that Anna was consistent in naming her abuser.  Appellant
characterizes the testimony from both therapists, in commenting on the children=s consistency, as
offering an opinion and direct comment as to the complainants= truthfulness. 
Appellant complains of testimony from Totenbier, Anna=s dance therapist
at the Children=s Assessment Center, in the following
exchange:

[PROSECUTOR]:  During the time that you had with [Anna],
did she understand what she was there to receive therapy for?

[WITNESS]: Oh, yes.  Actually one of her first comments was
that.

[PROSECUTOR]:  Okay.  Now, has she been consistent the
entire time with you regarding the abuse and everything else?

[WITNESS]:  Yes, she has.

[APPELLANT=S TRIAL COUNSEL]:  I object.  I withdraw the objection.

[PROSECUTOR]:  Okay.  Has she been consistent with you?

[WITNESS]:  Yes, she has.

[PROSECUTOR]:  Has she been consistent with [you] about
whom her abuser was?

[APPELLANT=S TRIAL COUNSEL]:  I object.  I object.  This goes to the ultimate
question.  I object to this witness being solicited for expert testimony
thereon.

[TRIAL JUDGE]:  Overruled.

[PROSECUTOR]:  Has she been consistent with whom her abuser
was?

[WITNESS]:  Yes.

The
State passed the witness.








Expert testimony may provide useful background information
to aid a jury in evaluating the testimony of another witnessCfor example, by
explaining that children who have been sexually abused sometimes offer
conflicting accountsCas a way of assisting a factfinder in
determining the impeachment value of a complainant=s prior
statements.  See Pavlacka v. State, 892 S.W.2d 897, 903 n.6 (Tex. Crim.
App. 1994).  In this case, the therapists= testimony did not
disclose what the children said in therapy or the name of the abuser; rather,
the testimony indicates that the children offered the same facts in their
accounts of the abuse during therapy.  See Head, 4 S.W.3d at 262
(overruling hearsay complaint to testimony regarding the consistency of a
complainant=s account); Gauna, 2006 WL 3841235, at *7
(determining experts= testimony of complainant=s consistency in
describing abuse is relevant evidence, not unfairly prejudicial, and not
inadmissible hearsay).  The therapists did not express an opinion that the
children were abused or that the children were truthful in their allegations.  See
Cohn, 849 S.W.2d at 818.  The primary purpose of their testimony was
to provide useful background information for the jury to consider, based on the
therapists= interactions with the children in therapy, and did
not take the place of a factfinder.  See Cohn, 849 S.W.2d at 818; see
also Pavlacka, 892 S.W.2d at 903 n.6 (providing that expert testimony may
aid a factfinder by providing information that sexually abused children
sometimes offer conflicting accounts). 








Although an expert witness may not directly comment on a
complainant=s truthfulness, an expert witness may testify to
aspects of a complainant=s demeanor that may suggest the
complainant was subject to manipulation.  See Burns v. State, 122 S.W.3d
434, 437 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (concluding
that expert=s testimony regarding psychological test results,
which suggested victim answered questions in an open, non-defensive, and
truthful manner, did not constitute an impermissible comment on the victim=s truthfulness); see
also Darling v. State, 262 S.W.3d 920, 924 (Tex. App.CTexarkana 2008,
pet. ref=d) (providing that
an expert witness=s opinion testimony that a child does not
exhibit signs of having been coached or manipulated to make a false accusation
of sexual abuse does not amount to a comment on the child=s truthfulness). 
In this case, the therapists indicated only that the children consistently
offered the same facts of the alleged abuse, but the therapists did not attempt
to suggest the children were truthful or that the children=s allegations were
true.  See Burns, 122 S.W.3d at 437.  Therefore, presuming that
appellant voiced his appellate complaints regarding the therapists= testimony in the
trial court, these complaints lack merit because the therapists= testimony that
the children offered consistent accounts is not a comment on the children=s truthfulness. 
Accordingly, we overrule appellant=s third issue.

D.      Did the State establish
that a prior out-of-state conviction was available for enhancement of appellant=s sentence?

Appellant complains that evidence of a prior Ohio
conviction, involving corruption of a minor, was submitted to the jury for
enhancement of his sentence, arguing (1) the State did not satisfy the
business-record exception to the hearsay rule in tendering a multi-document
exhibit, State=s Exhibit 9, which contains references to the prior
Ohio conviction; and (2) the State offered insufficient information to prove
that the Ohio offense was substantially similar to Texas=s statutory
definition of Asexual assault,@ and, therefore,
the State failed to show that the Ohio conviction was available for enhancement
under Texas Penal Code section 12.42(c)(2)(B).

Did the State satisfy the business-record exception to the
hearsay rule?








Appellant=s complaint under the business-record
exception centers on State=s Exhibit 9, comprised of multiple
documents from appellant=s sex-offender records in Texas.  These
documents include appellant=s sex-offender registration and
verification forms and acknowledgment, updated forms for changes in address or
employment, officers= field notes detailing appellant=s contact with the
county=s sex-offender
registration unit, and registration receipts and permits.  Appellant=s signature and
fingerprints are contained within the documents along with information citing a
prior Ohio conviction including a cause number, punishment, and county.  When
the State asked the trial court to admit Exhibit 9 into evidence as a business
record, appellant objected to its admission, arguing that the witness, a
sheriff=s deputy who is a
supervisor and custodian of records at the sex-offender registration unit of
the sheriff=s department, lacked personal knowledge regarding the
Ohio conviction as reflected in Exhibit 9 to satisfy an exception to the
hearsay rule.  The trial court overruled appellant=s objection. 

Through the testimony of another witness, three other
evidentiary exhibits[8]
were subsequently admitted into evidence.  These three exhibits were certified
copies of judgments stemming from a conviction in Ohio for corruption of a
minor.  The witness connected appellant to the Ohio conviction by verifying
that the Ohio cause number contained in Exhibit 9 was the same cause number
listed for the three Ohio judgments.  Appellant complains that without the
deputy=s personal
knowledge of the Ohio conviction in creating Exhibit 9, the State had not laid
the proper predicate for Exhibit 9 as a business record, and, therefore, the
three exhibits from the Ohio conviction lacked relevance.[9]  The trial court overruled
appellant=s objection.  Appellant argues on appeal that without
Exhibit 9, the record lacks sufficient evidence to link him to the Ohio
offense, and evidence of the Ohio conviction would not have been available for
enhancement purposes, and, therefore, such evidence should not have been considered
by the jury for enhancement.








We review a trial court=s decision to
admit or exclude evidence under an abuse-of- discretion standard.  See Moses
v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); Mozon v. State,
991 S.W.2d 841, 846B47 (Tex. Crim. App. 1999).  If the trial
court=s ruling was
within the zone of reasonable disagreement, we must affirm.  See Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh=g).

The predicate for introducing a document under the
business-records exception to the hearsay rule requires proof that (1) the
record was made at or near the time of the activity by or from information
transmitted by a person with knowledge of the events or conditions recorded,
(2) the record was kept in the course of regularly conducted business activity,
and (3) the record was made as part of a regular practice of the business
activity.  See Tex. R. Evid.
803(6); Shaw v. State, 826 S.W.2d 763, 765 (Tex. App.CFort Worth 1992,
pet. ref=d).  The rule does
not require that a witness laying the predicate for introduction of the
business records to have created the records or even to have been an employee
of the same business.  See Shaw, 826 S.W.2d at 765.  A qualified witness
does not need to have personal knowledge regarding the contents of the records;
rather, the witness must have knowledge of the mode of preparation of the
records.  Id.

In this case, the sheriff=s deputy testified
that the county=s sex-offender registration unit received
appellant=s criminal records from another agency, the probation
department, and from the Ohio court.  The deputy testified that sheriff=s office personnel
printed the information and researched it for accuracy.  Specifically, the
deputy testified that her agency confirmed that appellant was convicted of a
sexual offense out of state by calling a probation officer who faxed the Ohio
court papers to the sheriff=s office.  Sheriff=s department
personnel verified facts within the record with appellant, who signed many of
the registration documents containing reference to the Ohio cause number.  The
deputy affirmed that this method is the usual practice of sheriff=s department
employees in confirming information of an offender and the records were kept in
the regular course of business of her agency.  








Texas Rule of Evidence 803(6) does not require that
employees of a sheriff=s office have personal knowledge of the
information transmitted to them by others.  See Webb v. State, 840
S.W.2d 543, 547 (Tex. App.CDallas 1992, no pet.) (involving jail
cards containing prior criminal history that were used to link the accused to
prior offenses); see also Jennings v. State, No. 01-94-00204-CR, 1994 WL
362706, at *3 (Tex. App.CHouston [1st Dist.] July 14, 1994, pet.
ref=d) (not designated
for publication) (concluding that sheriff=s office personnel
do not need personal knowledge of information received from court that is
included in jail cards).  In this case, the deputy who laid the predicate for
introduction of Exhibit 9 as a business record demonstrated she had personal
knowledge of the mode of preparation of the records.[10]  See Webb,
840 S.W.2d at 547.  Therefore, the trial court did not abuse its discretion in
admitting Exhibit 9 into evidence.[11] 
See id.

Did the State establish that the prior Ohio conviction was
available for enhancement under Texas Penal Code section 12.42(c)(2)(B)?








To the
extent appellant argues that the Ohio statutes defining Acorruption of a minor@ and Asexual conduct,@ furnished by the State to the trial
court, were insufficient and either outdated or too recent to enable the trial
court to determine that appellant=s 1995 Ohio conviction was
substantially similar to a Texas offense, appellant has not preserved this
argument for appeal.  See Heidelberg v. State, 144 S.W.3d 535, 537 (Tex.
Crim. App. 2004); Rezac v. State, 782 S.W.2d 869, 871 (Tex. Crim. App.
1990); see also Randolph v. State, No. 06-08-00058-CR, 2008 WL
5058597, at *2 n.3 (Tex. App.CTexarkana Dec. 2, 2008, no pet.) (mem. op., not designated
for publication) (noting that appellant did not object at trial, under Rule of
Evidence 202, that the State offered insufficient information to enable the
trial judge to take judicial notice of a foreign jurisdiction=s statute).  At trial, appellant
complained that the Ohio conviction was different and not the same as or
similar to Asexual assault@ as defined by Texas=s penal statutes.  However, on
appeal, appellant complains that the State did not offer sufficient information
to enable the trial court to make its determination because the furnished Ohio
statutes were either outdated or too recent for the trial court to consider the
similarities of the 1995 Ohio conviction.  Appellant=s complaint on appeal does not
comport with his objection at trial; therefore, the complaint is not preserved
for appellate review.  See Heidelberg, 144 S.W.3d at 537; Rezac,
782 S.W.2d at 871; see also Hill v. State, No.
05-94-00625-CR, 1995 WL 110573, at *5 (Tex. App.CDallas Mar. 9, 1995, pet. granted,
judgm=t vacated) (mem. op., not designated
for publication) (involving failure to preserve error as to judicial notice
involving an evidentiary exhibit when objection at trial did not comport with
argument on appeal).  Accordingly, any such complaint is waived.








However, appellant objected at trial and complains on
appeal that the State did not show that a 1995 conviction in Ohio for
corruption of a minor is available for enhancement of punishment within the
purview of Texas Penal Code subsection 12.42(c)(2)(B).  At a hearing outside of
the jury=s presence, the
trial court considered whether an Ohio offense for corruption of a minor was
substantially similar to an offense within the Texas Penal Code.  The State
furnished copies of two Ohio statutes, Ohio Revised Code sections 2907.04 and
2907.01.  The record reflects that the trial court took judicial notice of the
Ohio Revised Code section 2907.04, which contained elements of the offense of
corruption of a minor, and subsection (A) of Ohio Revised Code section 2907.01,
defining Asexual conduct.@[12]  The trial  court
found that the Ohio conviction for corruption of a minor was substantially
similar to the offense of sexual assault under section 22.011 of the Texas
Penal Code.  

The two Ohio statutes, as offered by the State as Exhibits
16 and 17, were not included in the record and were not admitted into
evidence.  Therefore, in our review, we, too, take judicial notice of the Ohio
statute setting forth the offense of corruption of a minor, as effective at the
time of appellant=s initial December 4, 1995 Ohio
conviction.  See Tex. R. Evid.
202; see also Gette v. State, 209 S.W.3d 139, 144 (Tex. App.CHouston [1st
Dist.] 2006, no pet.) (providing that courts may take judicial notice, under
Rule of Evidence 202, of ordinances from another state).  Ohio Revised Code
section 2907.04, effective July 24, 1990, through July 1, 1996, provides in
relevant part:

(A) No person who is eighteen years of age or older shall
engage in sexual conduct with another, who is not the spouse of the offender,
when the offender knows other such person is thirteen years of age or older but
less than sixteen years of age, or the offender is reckless in that regard.

(B) Whoever violates this section is guilty of corruption
of a minor, a felony of the third degree.  If the offender is less than four
years older than the other person, corruption of a minor is a misdemeanor of
the first degree.

Ohio Rev. Code Ann. ' 2907.04 (West
1990).  Ohio subsection 2907.01(A), effective January 1, 1991, through July 1,
1996, defines Asexual conduct,@ as provided
below,

vaginal intercourse between a male and female; anal
intercourse, fellatio, and cunnilingus between persons regardless of sex; and
without privilege to do so, the insertion, however slight, of any part of the
body or any instrument, apparatus, or other object into the vaginal or anal
opening of another.  Penetration, however slight, is sufficient to complete
vaginal or anal intercourse.

Id. ' 2907.01(A) (West
1991).








We review the trial court=s interpretation
of the Ohio and Texas statutes under a de novo standard.  See Prudholm
v. State, 274 S.W.3d 236, 238 (Tex. App.CHouston [1st
Dist.] 2008, pet. ref=d).  Subsection 12.42(c)(2)(B) of the
Texas Penal Code requires punishment by imprisonment for life for certain
repeat offenders.  See Tex. Penal
Code Ann. ' 12.42(c)(2)(B)
(Vernon Supp. 2008).  We first consider whether the 1995 Ohio conviction was
governed by subsection 12.42(c)(2)(B) of the Texas Penal Code as a previous
conviction for an offense committed Aunder the laws of
another state containing elements that are substantially similar to the
elements of an offense listed in Subparagraph (i), (ii), (iii), or (iv).@  See
Tex. Penal Code Ann. '
12.42(c)(2)(B)(v); Ex parte White, 211 S.W.3d 316, 318 (Tex. Crim. App.
2007).  

The trial court found that the Ohio statute contained
substantially similar elements to section 22.011 of the Texas Penal Code. 
Subparagraph 12.42(c)(2)(B)(i) identifies Asexual assault@ under Texas Penal
Code section 22.011, among other offenses, as a prior conviction to be used for
enhancement for life imprisonment.  See Tex. Penal Code Ann.
'
12.42.(c)(2)(B)(i); Ex parte White, 211 S.W.3d at 318; see also Tex. Penal Code Ann. ' 22.011 (Vernon
2008) (providing elements of the offense of sexual assault).  We consider
whether the elements of the Ohio conviction are Asubstantially
similar@ to the elements
of an offense within the purview of subsection 12.42(c)(2)(B)(iBiv).  See Tex. Penal Code Ann. ' 12.42.(c)(2)(B); Ex
parte White, 211 S.W.3d at 318.  Elements of another state=s law are
considered substantially similar to elements of an offense listed in section
12.42(c)(2)(B)(iBiv) when the elements of the other state=s law parallel the
elements of a single Texas offense.  See Prudholm, 274 S.W.3d at 239.








Under Ohio law, a person is guilty of the felony of
corruption of a minor when that person engages Ain sexual conduct
with another, who is not the spouse of the offender, when the offender knows
other such person is thirteen years of age or older but less than sixteen years
of age, or the offender is reckless in that regard.@  Ohio Rev. Code Ann. ' 2907.04.  ASexual conduct@ as contemplated
by the Ohio statute, provided above, includes, among other conduct, vaginal and
anal intercourse, fellatio, cunnilingus, and penetration of a person=s vaginal or anal
opening.  See id. ' 2907.01.  In Texas, a person commits the
offense of sexual assault of a child as contemplated by section 22.011(a)(2)(A)
if that person intentionally or knowingly Acauses the
penetration of the anus or sexual organ of a child by any means.@  See Tex. Penal Code Ann. ' 22.011(a)(2)(A). 
Under subsection 22.011(c), a Achild@ is defined as Aa person younger
than seventeen years of age who is not the spouse of the actor.@  Id. ' 22.011(c) (Vernon
Supp. 2008).  Both the Ohio statutes and the Texas statute contemplate that an
offense is committed when penetration of a child=s anus or sexual
organ occurs.  See Tex. Penal
Code Ann. ' 22.011(a)(2)(A) (defining Asexual assault@ as penetration of
a child=s anus or sexual
organ); id. ' 22.011(c) (defining a Achild@ as a person who
is under seventeen years of age); Ohio
Rev. Code Ann. ' 2907.01 (defining Asexual conduct@ as including
penetration of one=s anus or vaginal opening); id. ' 2907.04 (defining
Acorruption of a
minor@ as sexual conduct
with another person Awhen the offender knows other such person
is thirteen years of age or older but less than sixteen years of age@); see also
Prudholm, 274 S.W.3d at 239 (providing that Asubstantially
similar@ elements of
different statutes will Aparallel@ each other).  We
conclude the elements of the Ohio offense for which appellant was convicted are
substantially similar to the elements of an offense listed in subparagraph (i)
of subsection 12.42(c)(2)(B), specifically sexual assault of a child, as
reflected in section 22.011(a)(2)(A) of the Texas Penal Code.  See Ex parte
White, 211 S.W.3d at 318 (holding Delaware offense of unlawful sexual
contact is substantially similar to Texas offense of indecency with a child); see
also Randolph, 2008 WL 5058597, at *2 (determining Minnesota offense of
criminal sexual conduct was substantially similar to an offense in Texas of
aggravated sexual assault of a child).  Because of his prior conviction in
Ohio, appellant has been Apreviously convicted,@ under the laws of
another state of an offense containing elements that are substantially similar
to the elements of an offense listed in subparagraph 12.42(c)(2)(B).  See Tex. Penal Code Ann. ' 12.42(c)(2)(B)(v);
Ex parte White, 211 S.W.3d at 318.  Accordingly, the trial court
did not err in making the determination that the elements of the Ohio statute
were substantially similar to an offense listed under section 12.42(c)(2)(B) of
the Texas Penal Code.  See Randolph, 2008 WL 5058597, at *2.  








Appellant complains that Athe State did not
show whether the State of Ohio in 1995, viewed the probation imposed in Case
Number 95 CR 06572 as available for use in an enhancement allegation.@  According to
appellant, if Ohio did not view a conviction for corruption of a minor as
available for use of enhancement, then use of the Ohio conviction for
enhancement under Texas Penal Code section 12.42(c)(2)(B) presents an issue
under the ex post facto clause of the United States Constitution.  








As a general rule for purposes of subsection 12.42(c)(2), Aa conviction under
the laws of another state for an offense containing the elements that are
substantially similar to the elements of an offense listed under Subsection
(c)(2)(B) is a conviction of an offense listed under Subsection (c)(2)(B),@ thereby making
such an offense available for enhancement.  Tex.
Penal Code Ann. ' 12.42(g)(1) (Vernon Supp. 2008); Tex. Penal Code Ann. ' 12.42(c)(2)(B); see
also Prudholm, 274 S.W.3d at 240 (AThe Court of
Criminal Appeals [in Ex parte White] did not emphasize the point, but it
is significant that a person guilty of the Delaware law would also be guilty
under Texas law.@).  Appellant=s argument,
regarding how Ohio viewed a conviction for corruption of a minor as available
for enhancement, lacks merit because it is not necessary to determine whether
an originating jurisdiction, in which a prior conviction occurred, considered
the prior conviction to be available for use in the future as an enhancement.[13]  See Ex
parte White, 211 S.W.3d at 320 n.4.  Furthermore it is not necessary to
determine the effect of finality of a prior conviction in a foreign
jurisdiction on enhancements in Texas.  Id.  As long as the record
contains proof of a prior foreign conviction for an offense containing elements
that are substantially similar to the elements of an offense listed under
subsection 12.42(c)(2)(B), that prior foreign conviction may be used to enhance
punishment under subsection 12.42(c)(2).  See id. at 320.  Because
appellant previously was convicted under the laws of another state for an
offense that is substantially similar to the elements of an offense listed in
subparagraph 12.42(c)(2)(B), appellant=s Ohio prior conviction
was available to enhance punishment of the charged offenses.  See Tex. Penal Code Ann. ' 12.42(c)(2)(B)(v);
Ex parte White, 211 S.W.3d at 318.  Therefore, we overrule
appellant=s fourth issue.

E.      Did the trial court err in
cumulating the judgments?

In his fifth issue, appellant complains that the trial
court granted the State=s motion to cumulate the sentences for
life imprisonment.  Appellant points to the judgments, each of which reflects a
notation the A[t]he judge signed an order to cumulate sentences
9/27/07,@ and appellant
complains that the record contains no written order or motion to cumulate the
sentences, despite his request to supplement the record with such documents. 
After reviewing the record, we note that the clerk=s second
supplemental record for each cause number contains both the State=s motion to
cumulate sentences and the trial court=s written order,
signed on September 27, 2007, granting the State=s motion. 
Appellant=s complaint therefore lacks merit.  Accordingly, we
overrule appellant=s fifth issue.








Having overruled each of appellant=s five issues, we
affirm the trial court=s judgments.

 

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  To protect the privacy of the complainants in this
case, we identify them by pseudonyms.





[2]  Anna was born on June 2, 2000.





[3]  Betsy was born February 27, 2002. 





[4]  At the time of the June 30, 2005 interview, Betsy
was three years and four months old.  At the time of the October 13, 2005
interview, Betsy was three years and eight months old.





[5]  Betsy testified that Janice was no longer her
mother.  Evidence in the record indicates that the children have not been in
Janice=s custody since June 21, 2005.





[6]  To the extent appellant complains that his rights
under the Confrontation Clause were denied, appellant has failed to preserve
error.  See Fox v. State, 175 S.W.3d 475, 484B85 (Tex. App.CTexarkana
2005, pet. ref=d) (concluding error not preserved when an accused
objected on relevance grounds to therapist=s
testimony regarding an abused child=s
post-traumatic stress disorder when on appeal that objection was not sufficient
to preserve a claim under the Confrontation Clause).  To preserve a complaint for
appellate review, a party must make a timely request, objection, or motion with
sufficient specificity to apprise the trial
court of the complaint.  Tex. R. App. P.
33.1(a); Saldano v. State, 70 S.W.3d 873, 886B87 (Tex. Crim. App. 2002). 
Appellant has not cited and the record does not reveal that appellant apprised
the trial court of any objection under the federal or state constitutions.  Reyna
v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (providing that when
an objection encompasses complaints under both evidentiary rules and the
Confrontation Clause, the objection is not sufficiently specific to preserve
error on Confrontation Clause grounds); Johnson v. State, 803 S.W.2d
272, 292 (Tex. Crim. App. 1990), overruled on other grounds, Heitman
v. State, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991).  With few
exceptions, not applicable here, even constitutional complaints may be waived
by the failure to raise a timely objection in the trial court.  See Saldano,
70 S.W.3d at 886B89.





[7]  Appellant did not object to the witnesses= qualifications as experts; therefore, we presume,
without deciding, that the witnesses were qualified as experts.  See Johnson
v. State, 970 S.W.2d 716, 720 (Tex. App.CBeaumont
1998, no pet.).  





[8] 
State=s Exhibits 6, 7, and 8 are certified copies of three
judgments from cause number 95 CR 06572 in the Court of Common Pleas in
Defiance County, Ohio; the judgments are dated December 4, 1995, June 4, 1996,
and October 28, 1996 in succession.  The first judgment, dated December 4,
1995, indicates that a Larry L. Wagner, Jr. received a suspended two-year
prison sentence and four years= probation for
the charge of corruption of a minor, under Ohio Revised Code Section 2907.04. 
In the second judgment, dated June 4, 1996, the court revokes appellant=s probation and reimposes the sentence for two years= imprisonment.  In the third judgment, dated October
28, 1996, the Ohio Court orders that appellant=s probation should not be revoked.





[9] 
On appeal, appellant does not challenge the admissibility of these exhibits;
rather, appellant complains that without Exhibit 9, State=s Exhibits 6, 7, and 8, would not have been admitted,
and therefore, no other evidence would connect him to the Ohio offense for
enhancement purposes.





[10] 
Appellant relies on Garcia v. State, 126 S.W.3d 921 (Tex. Crim. App.
2004), citing it for the proposition that if the source of information is an
outsider to the business, the record should not be admitted under the
business-records exception.  In that case, the wife of the accused told a women=s shelter about the accused=s abuse, and the shelter=s records, which contained a recitation of the wife=s story, were tendered as business records.  Id.
at 925B26.  However, that case is factually distinguishable
because the State laid a proper foundation for the business records, but the
source of the information, which was the wife=s account upon which the records were made, lacked reliability because
the wife had no reason to report the abuse accurately to the shelter.  See
id. at 926.





[11] 
Because we conclude Exhibit 9 was properly admitted into evidence, we need not
and do not address appellant=s complaint
that no other evidence linked him to the Ohio conviction for enhancement
purposes under subsection 12.42(c)(2)(B) of the Texas Penal Code because State=s Exhibits 6, 7, and 8, the three Ohio judgments, were
admitted.





[12] 
Appellant does not complain on appeal that the trial court erred in taking
judicial notice of the Ohio statutes.  A trial court may take judicial notice
of statutes from other states within the United States.  See Tex. R. Evid. 202; see also Randolph,
2008 WL 5058597, at *1 (providing that statutory interpretation, as a question
of law, requires judicial notice of Minnesota statute to make a finding that a
Minnesota offense was substantially similar to an offense under Texas Penal
Code section 12.42(c)(2)).





[13] 
Appellant does not appear to contest the finality of the Ohio conviction.  To
the degree that appellant suggests the Ohio conviction was not final, this
scenario does not present an issue under the ex post facto clause of the United
States Constitution.  See Ex Parte White, 211 S.W.3d at 320 (providing
that, as in Scott v. State, 55 S.W.3d 593 (Tex. Crim. App. 2001), Aenhancement statutes penalize the new criminal offense
being enhanced rather than the prior offense being enhanced and that a statute
imposing a punishment on only future crimes is not an ex post facto violation@).  Furthermore, it is not necessary to determine
whether an originating jurisdiction considered the finality of an offense for
Texas to consider using it as an enhancement.  See Ex Parte White, 211
S.W.3d at 319 n.4.  Appellant cites Scott v. State, 55 S.W.3d 593 (Tex.
Crim. App. 2001) for support, but we distinguish the instant case on the basis
that the Ohio statute under which appellant was convicted contained no
restriction or limitation on the collateral consequences of appellant=s previous conviction.  See Ex parte White, 211
S.W.3d at 320 (distinguishing Scott on the same basis).  Appellant also
cites Diremiggio v. State, 637 S.W.2d 926 (Tex. Crim. App. 1982) for
support that the State failed to make a prima facie showing for use of the Ohio
conviction for enhancement.  In Ex parte White, the Texas Court of
Criminal Appeals expressly held that a prior foreign conviction for an offense
containing elements that are substantially similar to the elements of an
offense listed under subsection 12.42(c)(2)(B), as in this case, may be used
for enhancement under subsection 12.42(c)(2).  See Ex parte White, 211
S.W.3d at 319B20 (reading subsection 12.42(c)(2) in conjunction with
subsection 12.42(g)).